## Farmers' and Mechanics' Bank of Michigan v. Oliver Bronson and others.

*Bill to redeem prior mortgage. Mortgagee in possession to account for rents and profits.* In 1838, one Bacon, being in possession, conveyed certain land to one Harris, who gave back a mortgage. Harris soon after deeded to one Green, who took possession in 1839, and gave a mortgage to complainants who have since foreclosed it and obtained the usual deed. Bacon obtained a decree of sale upon his mortgage in 1840 and assigned it to defendants, and it was still held by them. In 1845 Green quit-claimed the premises to the defendants, who then went into possession, and have remained in possession ever since. No sale had ever taken place under the Bacon decree, and complainants filed their bill to redeem the same, and to have the defendants apply upon it the rents and profits of the premises received since they had been in possession. *Held*, that, if these were all the facts in the case, there could be no doubt of the right of complainants to the relief prayed.

*Mortgagee in possession. Estoppel.* But defendants alleged that Green had no title at the time he mortgaged to complainants, and that they occupied the premises under title paramount to that derived through Harris, the grantor of Green. To establish this allegation they introduced evidence tending to show certain defects in the chain of title to Harris, and deeds procured by them to cover these defects. One of these, appearing to have been obtained for this purpose, and with knowledge of a prior unrecorded deed, it was *held*, that the defendant obtaining the same was not in a position to claim anything under it, as against any one claiming through such prior deed.

*Held*, further, that the defendants having taken possession under Green, they could not repudiate his title afterwards, and that all releases obtained by them to cover defects in the title must be considered as obtained in support of the Green title and not for its destruction.

FARMERS' AND MECHANICS' BANK *v*. BRONSON.

*Claim of paramount title, how proved.* The claim of paramount title could not be supported by the mere record title from a particular grantor, older than the one to be overruled; but it must be shown that this grantor had a title, beyond the mere fact that he assumed to make a conveyance. This standing by itself is no evidence of that fact.—*Smith v. Lawrence,* 12 *Mich.* 431.

*Defective conveyances, effect of recording.* The record of a deed, void for defective execution, is inadmissible as evidence. The law makes conveyances properly executed and recorded evidence, but the record of those not properly executed, being entirely unauthorized, cannot prove the existence of originals.

*Defendants claiming a paramount title against the prima facie title assume the burden of proof.* The complainants in a bill to redeem a prior mortgage are not bound to show title in their mortgagor, in the first instance; in this case the defendants claimed to hold by a paramount title. The complainants having a *prima facie* right, the defendants assume the burden of showing a paramount title in themselves to overthrow an apparent right; and their only evidence in this case was the record of a deed, which, if valid, did not support the allegation; and, if invalid, was not admissible in evidence.

The defendants set up an equitable mortgage in themselves from Green, prior to the mortgage of complainants. The latter was acknowledged, November 30th, 1839, and recorded two days after. On the 24th of the preceding June, Green had entered into a contract with the defendants, which was claimed to be such equitable mortgage, and to have precedence over complainants' mortgage. It was an executory contract and showed no indebtedness then existing. This agreement was acknowledged by one of the defendants, but not by Green, and was recorded October 29th, 1839. *Held,* that the record of this agreement could not operate as constructive notice to any one claiming as subsequent purchaser or incumbrancer from Green.—*Hall v. Redson,* 10 *Mich.* 21.

*Register of Deeds, effect of certificate of unauthorized record.* In the certified copy of the record of a mortgage, there were no marks opposite the signatures indicating seals; but there was a certificate of the Register of Deeds that the words "not sealed" were entered in the record opposite the names in the handwriting of his predecessor. *Held,* that this certificate is not legal evidence. The Register was bound to record all instruments properly executed, by spreading a true copy on the record, but he had no authority of law for entering statements of fact to make them evidence against other parties.

*Cross bill, when proper—effect of decree upon.* The defendants were made parties by the complainants in their bill of foreclosure, under the general allegation that they claimed some interest as subsequent incumbrancers, or otherwise. The defendants filed a cross-bill, setting up an alleged equitable mortgage, and claiming on several grounds that complainants' mortgage should be postponed to theirs. On a final hearing, on bill, answer and proofs, the cross-bill was dismissed. *Held,* that this decree must be taken as final. Whether the bill was a proper cross-bill or not, if it prayed affirmative relief the Court had jurisdiction, and a decision based upon the merits is just as conclusive as in any other case. The bill was not dismissed without prejudice, and it must be assumed that the questions raised by it were disposed of upon the merits.

*A claim of the priority of equities a proper subject of cross-bill.* A claim by defendants that they have a prior equitable mortgage to that of complainants, and praying that the latter may be postponed to such prior equitable lien, is a proper subject for a cross-bill, in a foreclosure suit; notwithstanding the principle that prior and paramount rights are not to be contested in such a suit. The complainants having the *prima facie* lien, it was proper for defendants, having gone into possession under the mortgagor, to present the facts on which they alleged a prior equitable lien, by cross-bill, in order that they might be protected by the decree.

FARMERS' AND MECHANICS' BANK *v.* BRONSON.

*Tax deed of* 1840, *when evidence. Parties to foreclosure suit.* A tax deed, acquired in 1840, under statutes which did not make the deed *prima facie* evidence of regularity, fails to show title, without evidence showing the correctness of the proceedings.

The fact that the defendants held a tax deed of the mortgaged premises was no reason why they should not be made parties to a foreclosure suit, if in fact they claimed any rights in the premises which were subject to complainants' mortgage.—*Horton v. Ingersoll*, 13 *Mich.* 409.

*Heard May 3d and 4th.     Decided July 11th.*

Appeal from Wayne Circuit in Chancery.

The bill in this cause was filed by complainant to redeem certain premises in the village of Niles, Berrien County, from the effect of a certain mortgage, and to charge defendants with certain rents and profits as mortgagees in possession. Decree was rendered for complainant in the Court below, allowing them to redeem, and compelling defendants to apply in payment of said mortgage the rents received during their occupancy. The facts are fully stated in the opinion.

*Walker & Kent*, for complainants.

1. Harris, who made the mortgage, had the right to redeem it. He conveyed the property subject to the mortgage to Green. Green must have had all of Harris' right to redeem.

All of Green's rights at the time he made the mortgage to complainants were conveyed to them by the sale under their foreclosure. Complainants, therefore, have a lien upon the lot in question, subsequent to the mortgage made by Harris, and derived from the mortgagor. Hence, they have the right to redeem.— *Washb. on Real Prop.*, *vol.* 1, 553; 9 *Mich.* 465.

2. Complainants are entitled to require defendants to apply the rents received by them since they have been in possession, in extinguishment of the mortgage.

There is no doubt of the general principle that a mortgagee in possession must apply the rents and profits to the reduction of the mortgage debt. And if there be a surplus after the debt is paid he must account for the surplus.—1 *Washb. on Real Prop. pp.* 557, 582 *and* 588.

It makes no difference that defendants are assignees of

the mortgage, and complainants' grantees of the equity of redemption.

3. Defendants claim that the rents they have received should be applied in payment of what they call an equitable mortgage from Green to them, made prior to the mortgage to complainants.

They do not claim that complainants took their mortgage with any knowledge of the prior equity, but that the evidence shows that the mortgage to complainants was without seals, and so of itself merely an equity, and so should be postponed to their prior equity.

*a.* The only evidence of an equitable mortgage is an executory agreement for a mortgage, to be made at a future time.

*b.* There is no proper evidence that the mortgage to complainants was unsealed. The only evidence is the certificate of the Register of Berrien County, where the mortgage was recorded. But if the mortgage was unsealed, then it was not entitled to record, and the statute does not make a copy of the record, certified to by the Register, evidence.—*Laws of* 1840, *p.* 167.

But if the certificate is evidence of anything it certainly cannot be evidence that the words, "not sealed," found in pencil mark on the record of said mortgage, are in the hand writing of a former Register, now deceased; and if they were in his hand writing this is but his unsworn statement, and so not evidence of the fact. If it were proven that the mortgage had no seals when recorded it might still have had when executed more than a month before. They might have fallen off.

*c.* The question as to the prior equitable mortgage was settled in the prior suit, and is now *res judicata.*

4. The defendant's claim to be in possession of the lot in controversy by virtue of a title superior to that of Green, and claim that he had no title. The title they claim is also superior to that of Harris, the mortgagor.

The general principle that a mortgagee in possession cannot set up an adverse title against the mortgagor, on a bill to

redeem, is founded on the plainest justice, and settled by authority.—2 *Sumner*, 143–401; 3 *Mich.* 11.

5. The decree of the Court below gives costs to neither party. We submit that the circumstances of this case make it equitable that defendants should pay the costs.— *Chancery Rules*, 90; 2 *Barb. Ch. Pr.* 199; 5 *Pick.* 271.

*G. V. N. Lothrop*, for defendants.

1. As to the effect of the foreclosure decree and the dismissal of the cross-bill.

*a.* The office of a cross-bill is only to procure discovery, or to enable the court to give relief to all the parties on the matters of the original bill. It is always a mode of defense. It can be sustained only on matters growing out of the original bill.—3 *Danl. Ch. Pr.* 1742 (*Perkin's ed.*).; *Story's Eq. Pl.* §§ 389–393; 8 *Cow.* 361; 4 *Sandf. Ch.* 219.

A bill to foreclose a mortgage can only bring in the mortgagor's title, or interests subsequently acquired under that title. A defendant cannot set up and litigate a prior title or lien by answer or cross-bill. Should he attempt it by cross-bill, it would be dismissed on that ground. Hence the dismissal of the cross-bill could not operate as a bar to his prior lien, because it was not properly in litigation.

A judgment or decree is conclusive only where it has been rendered on the merits. It will never be presumed that the merits were passed on where the proceeding was one which does not require or permit a decision on the merits.—1 *Pet. C. C.* 193; 6 *Hill*, 114; 12 *Barb.* 168.

A cross-bill, which seeks no discovery and is not good as a defense, must be dismissed.—3 *Sandf. Ch.* 273. Such was the nature of the cross-bill in question, and hence must have been dismissed for that reason.

The Bronsons are therefore not precluded by the dismissal of the cross-bill from setting up their equitable mortgage.

*b.* The question then arises whether the equitable mortgage could be set up against the title of complainants. We insist

that it can, on the ground, that the mortgage under which complainants get their title was only an equitable mortgage. For we concede that if the bank mortgage was a legal mortgage, entitled to registry, it must prevail against a mere equitable mortgage.

The evidence shows a certified mortgage, but without seals. This is not a legal mortgage, and was not entitled to registry. Between equal equities the prior one has precedence.—1 *Story Eq. Jur.* § 64 *d*; 2 *Lead. Cases in Eq.* 67.

2. There is another principle. The Bronsons had the prior equity. When by the fraud of Green in giving the bank mortgage, they found their rights threatened, they had a right to get in the legal title for the protection of their equity. This they had a right to do, and a court of equity will support the advantage which this gives them.—1 *Story Eq. Jur.* § 64 *c.*; 2 *Lead. cases in Eq.* 68.

3. The Bronsons claim possession, as owners, by title paramount to the mortgage title and not as mortgagees under the Harris mortgage; and this title cannot be litigated in equity on a bill to redeem.

The complainants have an unquestionable right to redeem the Harris mortgage. But in a suit for redemption, they can have rents and profits applied only where the defendants are in possession merely as mortgagees. A person in possession as a mortgagee has no title to the rents except to satisfy his debt. This is so from the very nature of the case. This is the ground, and the only ground, on which this right is founded. And where this ground is wanting, the right does not exist.

If the possession is not as mortgagee, but by claim of paramount title, the validity of this title cannot be litigated in this proceeding. Another class of questions arise. They are questions of adverse legal title. These are wholly of legal cognizance. A court of equity will not entertain them. The complainants' right in such a case to the rents and profits are such rights as they may have to recover them at law; and the

limits of this right are very different from those in a bill against a mortgagee in possession.

In one word, in mortgage suits adverse legal rights cannot be litigated.—3 *Mich.* 448; 6 *N. Y.* 83; 9 *Id.* 502.

I therefore claim, in conclusion, that the decree in this case is wholly erroneous in directing any accounts of rents and profits. And farther, that even if an account can be taken at all in a case like this, the complainants have a right to only one-half of such rents and profits, because their title is good only to an undivided half of the lot.

COOLEY J.

The bill in this case was filed to redeem certain premises from the lien of a mortgage. These premises consist of a village lot in Niles. It appears that in 1838 Nathaniel Bacon, having previously been in possession and erected a building upon the lot, conveyed it to one Harris who gave back a mortgage for $4,000. Harris soon after gave Cogswell K. Green a deed of the lot, and Green took possession. October 15, 1839, Green gave a mortgage of the lot to complainants, who have since foreclosed it and obtained the usual deed. Proceedings were also taken to foreclose in Chancery the mortgage from Harris to Bacon, and decree was obtained in June, 1840, which was soon after assigned to defendants Bronson, and is still held by them. May 1, 1845, Green quit-claimed the lot to the Bronsons, who then went into possession and have continued to occupy ever since. No sale has ever taken place under the decree in the Bacon foreclosure suit, and complainants now seek to redeem from it and to have the Bronsons required to apply upon it the rents and profits of the premises since they have been in possession.

If these were all the facts in the case there could be no doubt of the right of complainants to the relief prayed. But several defenses are set up, based upon other facts which we shall proceed to notice.

I. It is alleged that Green had no title at the time he mort-

gaged to complainants, and that the Bronsons are now occupying and claiming the land by title paramount to that derived through Harris. To show that title defective, the records of the county were put in evidence showing the following deeds upon record covering the premises in controversy:

From William Justice and wife to Hiram Chilson and Lois Olds a deed of the whole lot, dated December 20th, 1831.

From Hiram Chilson and wife to Erasmus Winslow, a deed of an undivided half, dated February 18th, 1833.

From Erasmus Winslow, Lois Olds and Daniel Olds, her husband, to Luther Rice, a deed of the whole, dated December 27th, 1833. This deed, it is alleged failed to convey an undivided one-half of the lot, for the reason that the acknowledgement by Lois Olds was defective within the decision of this Court in *Sibley v. Johnson*, 1 *Mich.* 380, and therefore void.

Frederick Bronson, in July, 1845, procured a quit-claim deed from Mrs. Olds to himself, and now claims an undivided half of the lot under it.

Luther Rice gave a deed of the lot to Nathaniel Bacon and William H. Bacon, November 28, 1834. William H. Bacon deeded to Nathaniel Bacon, March 1, 1836, but the deed was not recorded until April 23, 1851, and on September 12, 1845, Frederick Bronson procured from William H. Bacon a quit-claim deed, under which he now claims to hold whatever title was vested in William H. Bacon by the deed from Rice.

We are of opinion that neither of these deeds is of any avail to defendants as against the right of complainants to redeem.

1. It clearly appears from the evidence that the deed from William H. Bacon was obtained by Frederick Bronson for the purpose of curing a defect in the title of record, and with full knowledge of the prior deed given by the grantor therein to Nathaniel Bacon. He is not in position, therefore, to claim anything under his quit-claim as against any one claiming through such prior deed.

2. It is fully admitted by the answer that the Bronsons went into possession of the premises, under Green, as mortgagees, and

for the purpose of applying the rents and profits of the premises upon a debt due from him to themselves, hereafter more particularly specified. Having thus taken possession under Green, they were not at liberty to repudiate his title afterwards; and all releases obtained by them to cover defects in the title must be held obtained in support of the Green title, and not for its destruction.

3. But if this were not so, and the case were to turn upon the apparent title as shown by the deeds, the claim of defendants would be equally defective. They claim to have derived a paramount title to the land through William H. Bacon and Lois Olds from William Justice; but there is nothing to show that William Justice ever owned the land beyond the fact that he assumed to convey it. This standing by itself is no evidence whatever of that fact.—*Smith v. Lawrence,* 12 *Mich.* 431.

4. Defendants, however, insist that complainants cannot dispute the title of William Justice and Lois Olds, inasmuch as they themselves claim to derive their title from them. But the only evidence of this fact is the record which the defendants introduce, and that record either shows nothing, or it shows too much for defendants' purpose. The deed from Lois Olds was either valid as to her half or entirely void. If valid, Green acquired through it all the title that William Justice ever had to that half, subject to the Harris mortgage. If void, the record was a nullity, and not admissible in evidence. The law makes conveyances properly executed and recorded, evidence; but the record of those not properly executed, being entirely unauthorized, cannot prove the existence of originals.

If this case were one which required complainants to show title in their mortgagor we might be called upon to consider the validity of the deed from Mrs. Olds to Rice; but it is not. There is nothing in the case to warrant the application of any principle of estoppel to complainants. *Prima facie,* their right to the relief prayed is both legal and just; and they

14 MICH.—2 G.

have a right to say of the record of Mrs. Olds' deed, that it is either evidence of a valid conveyance, or it is no evidence whatever against them. Defendants assume the burden of showing a paramount title in themselves to overthrow an apparent right; and the only evidence offered for the purpose according to their own theory of the Olds' deed, is entirely incompetent and inadmissible.

II. But there is another branch of the case which requires examination. The defendants not only claim rights under the Harris mortgage, but they also set up an equitable mortgage in themselves from Green, prior to the mortgage to complainants. The latter was acknowledged November 30, 1839, and was recorded two days later. On the 24th of the preceding June, Green had entered into a contract with the Bronsons which is claimed to be an equitable mortgage, and which, after providing for the sale of certain lands bought under a contract between them, of the date of November 5, 1835, and that the Bronsons should execute contracts of sale on receiving one-fourth the purchase money, contained a further agreement on the part of the Bronsons to pay and deliver to Green all the purchase moneys and securities, after deducting $12,310.60 and interest, and any costs and expenses they might have incurred. And Green, on his part, agreed that he would, immediately after the first day of October, execute to the Bronsons a mortgage on the premises in controversy, for said sum of $12,310.60 and interest; it being understood that the amounts received from the sales of the lands mentioned in the preceding contract should be applied to the payment thereof, as fast as received by the Bronsons. This agreement was acknowledged by one of the Bronsons, but not by Green, and was put upon record October 29, 1839.

The record of this agreement could not operate as constructive notice to any one claiming as subsequent purchaser or incumbrancer from Green.—*Hall v. Redson,* 10 *Mich.* 21. But it was prior in point of time to the mortgage from Green to complainants, and the Bronsons claim that it takes precedence

of that, for the reason that that also was in fact only an equitable mortgage, as the mortgagors had failed to attach seals to their signatures. The original mortgage was not put into the case, and the evidence that the seals are wanting consists in the facts that no seals appear opposite the names in the copy given from the record, and that the Register of Deeds certifies that the words "not sealed" are entered in the record opposite the names, in the hand writing of his predecessor. This certificate is not legal evidence. The Register was bound to record all instruments properly executed by spreading a true copy upon the record, but he had no authority of law for entering statements of fact to make them evidence against other parties. The original entry being unauthorized would not be evidence, and the copy would be equally incompetent. Whether the want of any marks, indicating seals, opposite the names in the record, is proof that none were attached to the original, and would preclude the record or a copy thereof, being evidence, is another and a different question.

But the complainants claim that the agreement between Green and the Bronsons does not constitute an equitable mortgage, and that if it does, the question of priority between it and their mortgage is *res judicata*. It appears from the record that the Bronsons were made parties to the bill by complainants for the foreclosure of their mortgage, under the general allegation that they claimed some interest as subsequent incumbrancers or otherwise; that the Bronsons filed a cross-bill in the case, setting up said agreement as an equitable mortgage, and claiming on several grounds, that complainants' mortgage should be postponed to their claims; that answer was filed in the case, proofs taken to sustain and rebut the allegations contained in the cross-bill, and on the final hearing a decree dismissing it was entered.

Defendants claim that this decree is not a bar to their defense in this suit, for the reason that the cross-bill was not a proper proceeding in the case in which it was filed, and was properly dismissed without regard to the merits. We do not

think this position well taken, or that it is of any importance now whether the matters set forth in that bill were proper to be used by way of defense to that suit or not. A bill filed as a cross-bill in a case not proper for it, is not to be dismissed for that reason, if it prays affirmative relief; and a decision upon the merits, based upon it, is just as conclusive as in any other case. A bill assuming to be a cross-bill, but bringing new matters into a case, not connected with the subject matter of the original suit, is to be regarded as an original bill,— *Andrews v. Kibbee*, 12 *Mich.* 94; and calling it a cross-bill is simply a misnomer.—*Pollock v. National Bank*, 7 *N. Y.* 274. Whatever view, therefore, we may take of the bill in question, the Court had jurisdiction to pass upon the questions raised by it, and as it was not dismissed without prejudice we must presume that those questions were disposed of upon the merits. The decree in that case, therefore, settled conclusively the priority of complainants' mortgage over the equitable claim of the Bronsons.

We are not to be understood, however, in what we have said as intimating an opinion that the bill was not a proper cross-bill in that case. The complainants had made the Bronsons parties to their bill as having, or claiming an interest in the premises subsequent to their own mortgage. In fact the Bronsons had gone into possession under Green, but they claimed a right to appropriate the rents and profits to what they insist is an equitable mortgage of their own, which, if valid as such, was prior in time to that of complainants. The questions involved between the parties were, *first*, whether complainants' mortgage was a legal one and properly executed and recorded; for if it was they were *prima facie* entitled to precedence; and *second*, if not a legal mortgage, then, whether the agreement between Green and the Bronsons amounted to an equitable mortgage, which would entitle them to precedence. Questions both of law and of fact were involved, and it appears to us quite clear that the case was a proper one for a cross-bill. Conceding that prior and par-

amount rights are not to be contested in a foreclosure suit, yet when the very question is, which is prior and paramount, it is, as proper to dispose of it in the first suit as in any subsequent one. The possession of the Bronsons being taken under Green, was *prima facie* subject to complainants' mortgage, and if they claimed an equitable lien which should give them priority, it was proper that they should present the facts concerning it that the Court might protect it by its decree. The Bronsons so thought at that time, and when the Court dismissed their bill and granted decree for complainants, it in effect decided that their rights were not entitled to priority over those of complainants, but were in fact subject to them, as complainants had alleged.

But the Bronsons also claim that they have a tax title upon the premises to which they may refer their possession, and which is sufficient to protect them against the relief prayed. This title was acquired in 1840, under statutes which did not make the deed *prima facie* evidence of regularity. No evidence was given of the correctness of the proceedings, and the deed therefore fails to show title. The fact that the Bronsons held a tax deed of the premises was no reason why they should not be made parties to the foreclosure suit, if in fact they claimed any rights in the premises which were subject to complainants' mortgage.—*Horton v. Ingersoll*, 13 *Mich.* 409. That they went into possession under Green, instead of under their tax title, is admitted by their answer, and the tax title was therefore no answer to the bill in the former case, or to an accounting in this.

The decree of the Court below, permitting redemption and requiring defendants to account for the rents and profits of the premises, while occupied by them, to be applied on the Harris mortgage, must be affirmed, with costs of this Court.

The other Justices concurred.