[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 303 
The defendant, in his answer, set up counterclaims for the specific performance of the contract, which the plaintiff sought, by the action, to have adjudged vacated and void, as to the three lots to be conveyed by the plaintiff to the defendant, with a deduction from the contract-price of the value of the leasehold interest in lot sixty, and, in case of the inability of the plaintiff to give a good title to the three lots, for damages for non-performance of the contract. These claims he had a right to set up in his answer, and have tried and determined in the action. (Code, § 150.)
The Special Term awarded a specific performance of the contract as to the three lots, with an abatement from the contract-price of the value of the leasehold interest to be transferred in lot sixty, having found, as a fact, that the plaintiff could not give a good title to the latter. Upon appeal from the judgment, the General Term modified it, by awarding specific performance of the entire contract by the plaintiff, in case the defendant consented to take the assignment of the *Page 306 
judgment, and, upon his consent thereto, affirmed the judgment. From this judgment the plaintiff appeals to this court. The first question to be determined, as the plaintiff appeals from the entire judgment, is, whether the General Term was right, without the consent of the plaintiff, in adjudging a specific performance as to the leasehold interest, although the defendant assented to such modification. The case shows that the plaintiff, in September, 1866, the time for the completion of the contract, offered a conveyance of the three lots, which he was to convey in fee, as to which there was no objection as to his title, and also to assign the corporation leases of lot sixty, pursuant to the contract, and demanded payment of the contract-price. That the defendant refused to perform the contract as to the leasehold interest, upon the ground that plaintiff had not a valid title thereto, for the reason that the corporation leases, which had been given upon a sale for unpaid taxes, etc., had been defeated by subsequent sales for taxes, etc., and that the lot was incumbered by unpaid taxes and assessments. The refusal of the defendant to perform this part of the contract was unqualified, and in this refusal he persisted until he assented to the modification made by the General Term in November, 1870. It is entirely clear that he could not have maintained an action against the plaintiff, commenced at that time, to enforce the specific performance of this part of the contract, even had there been no refusal by him to perform. The delay, unexcused, would have constituted a bar to such action. (Delavan v. Duncan,47 N Y, 485.) The case is much stronger by reason of the refusal of the defendant to perform the contract. The General Term erred in adjudging performance of this part of the contract against the plaintiff, without his assent, and he has a right to a reversal of this part of the judgment of the General Term.
This brings us to the inquiry, whether the judgment of the Special Term was right, and should have been affirmed by the General Term. It is insisted, by the counsel for the appellant, that this was erroneous, inasmuch as the plaintiff had *Page 307 
tendered, in September, 1866, on the day fixed for the performance of the contract, entire performance on his part, which the defendant refused to accept, and, on his part, refused to perform the contract according to its true intent and meaning. By the contract, the plaintiff agreed to convey to the defendant three specified lots, in fee. He offered full performance in respect to these. He further contracted to assign to the defendant corporation leases for fifty years, and 300 years on lot number sixty, an adjoining lot to those which he was to convey. He offered to the defendant an assignment of such leases, which the latter refused to accept, upon the ground that they had become invalid by a subsequent sale of the property by the corporation for unpaid taxes, and that the lot was then incumbered by unpaid taxes and assessments. There was evidence given tending to show that this objection was well founded, and the Special Term found in accordance therewith. The question is thus presented, whether, by the true construction of the contract, the plaintiff was bound to assign leases which would give the defendant a good title to the lot, for the terms therein expressed, or whether his contract called only for the assignment of leases given by the corporation upon the usual sale for unpaid taxes and assessments, carrying the title only conferred by such leases. If the former, the plaintiff could not perform and did not offer performance of the entire contract, and the defendant was not bound to accept the leases tendered as such. If the latter, the plaintiff offered to perform every thing required of him by the contract, and the defendant was bound to accept the leases as such performance. The rule is well settled, both at law and in equity, that an executory contract for the sale of a leasehold interest in premises, or generally for the sale and assignment of a lease of premises for a term of years, requires the vendor to give a good title to the interest agreed to be sold, and to transfer a lease that shall vest in the assignee a good title for the term therein expressed. (Purvis v. Rayer,
9 Price, 488; also reported 4 Eng. Exch., 170; Souter v.Drake, 5 Barn. *Page 308 
Adol., 992; Burwell v. Jackson, 5 Seld., 535.) But it is equally clear that a party having a lease given by the corporation of New York upon a sale for unpaid taxes, etc., contracting to sell and assign that particular lease, would not be held to warrant the title to the premises for the term therein expressed. In the former case he agrees to sell an interest in land, and the contract requires a transfer of the title agreed to be sold. In the latter, he agrees to sell a particular instrument and such title only as an assignment of the instrument will carry with it. If the contract is for the sale of a lease generally, the purchaser has a right to assume that it is a valid lease that will give a good title for the term expressed. Not so as to a corporation tax lease. These are subject under certain circumstances to be defeated by a redemption of the premises, and also from numerous other causes. The presumption is, that one agreeing for the purchase of such a lease is to take it at his own risk as to the title, and that the vendor is to warrant nothing more than its genuineness, and that it was given by the corporation, and his ownership. In the present case the plaintiff agreed to assign corporation leases for fifty and 300 years on lot sixty. This, I think, shows that he only undertook to transfer tax leases for these terms on the lot, and not for the sale of a leasehold interest in the lot to that extent. The language of the contract shows that the latter was not the intention of the parties. It is said that it cannot be presumed that the defendant would purchase instruments that might turn out to be wholly worthless; but nothing is more common, both in city and country, than a purchase of tax titles at the risk of the purchaser as to their validity, and the price paid is fixed accordingly. My conclusion is, that the plaintiff undertook only to assign corporation tax leases on the lot, and that he did not bind himself to warrant the validity of the title. The plaintiff tendered an assignment of such leases, according to the contract, at the time fixed for performance, which the defendant refused to accept and pay the contract-price of the property he agreed to purchase, and persisted in such refusal until the modification *Page 309 
of the judgment by the General Term. This refusal by the defendant put an end to all his right arising upon the contract.
Whether, in case of inability of the plaintiff to perform as to the leasehold interest, the Special Term was right in awarding specific performance in favor of the defendant as to the three lots, with an abatement from the contract-price of the value of the term for 300 years in lot sixty, is a question that it is unnecessary to determine. The opinion at General Term shows that the doubt there entertained upon this point led to the modification of the judgment.
We have not been referred to any local statute particularly providing for the recording of contracts for the sale of land in the city of New York. So far as I have discovered there is no such statute, and the recording of such contracts there has no effect except what is given by the general law of the State. Section 71, volume 3, Revised Statutes (5th ed.), page 59, among other things, provides that contracts for the sale of land may be acknowledged or proved, as provided in the chapter for the recording of conveyances of lands, etc., and when so proved or acknowledged may be recorded; and the record thereof when recorded, or a transcript thereof, may be read in evidence in the same manner as a conveyance recorded in such county. Section 70 expressly excludes contracts for the sale of lands from being included in the term conveyance, as used in the chapter. If these are the only statutory provisions applicable in the city of New York (and I know of no other), the only effect of recording the contract is to preserve the evidence and facilitate the proof. It in no other way affects the rights of the parties. The record of such contract would not be constructive notice to subsequent purchasers or incumbrancers. How such record can be regarded as a cloud upon the title, authorizing an action to cancel it, is not apparent. But as this question was not raised upon the trial or argued by counsel in this court, I shall not further examine it. Under such circumstances it cannot be decided here. *Page 310 
The judgment of the General and Special Terms must be reversed and a new trial ordered, costs to abide event.
All concur.
Judgment reversed.