WELLS, FARGO & CO., Respondents, *v.* CHARLES F. SMITH AND SAMUEL NESLIN, Appellants.

1. TRANSFER OF SECURITIES HELD BY INDORSER.—An indorser holding securities from the maker of a note, may transfer such securities to the payee, who can, upon failure to pay the notes indorsed, proceed to make the money out of the securities before suing upon the note. The rule is not changed by the fact that such securities are other notes and mortgages.

2. RECORDATION OF CONVEYANCES.—In this country the rule of common law has been so far changed that the registration of deeds has generally taken the place of livery of seizin, and the latter has been dispensed with either by usage or by statute.

3. LIVERY OF SEIZIN UNKNOWN IN UTAH.—In this Territory livery of seizin is unknown, and prior to the adoption of the statute requiring conveyances to be recorded, it had been dispensed with, because the public had recognized the recording system as its substitute.

4. CONSTRUCTIVE NOTICE OF RECORD.—Constructive notice exists when a party, by any circumstance whatever, is put upon inquiry—and records of deeds and mortgages, which are authorized, but not required to be kept by statute, are of sufficient importance to put parties upon inquiry as to their contents.

5. CONSTRUCTIVE NOTICE OF RECORD.—The American doctrine, universally held, is that the registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the same property.

Appeal from the Third Judicial District Court.
The facts are stated in the opinion of the court.

*Sutherland & Kimball,* for appellant Neslin.

Defendant Neslin's mortgage should be treated as a first lien, being prior in date, as there are no facts stated in the complaint or proved on the trial, to postpone the prior mortgage in favor of the plaintiff or John W. Kerr.

It is a maxim of very extensive application that "he has the better title who was first in point of time." Broom's Maxims, 236–260; 9 Paige, 61, note.

The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant. *Weaver* v. *Toogood*, 1 Barb. 238; *Embree* v. *Hanna*, 5 John. 101; *Muir* v. *Schenck*, 3 Hill, 238; *Watson* v. *LeRou*, 6 Barb. 481; *Lynch* v. *Utica Ins. Co.*, 18 Wend. 236; *Poillon* v. *Martin*, 1 Sandf. Ch. 559; *Berry* v. *Mutual Ins. Co.*, 2 John. Ch. 603.

Defendant Neslin's mortgage, besides being first, is shown to have been executed wholly to secure purchase money of the very premises covered by both mortgages.

We insist the prior recording of the plaintiff's mortgage has no effect, for no law existing in 1872 or 1873, requiring the recording of mortgages or defining the consequences of omitting to record them. There was established a recorder's office—see Laws of Utah, pp. 80, 81, 92, 93.

By these acts only the duty of recorders is defined.

An attempt was made to show a custom to record mortgages.

The law is well settled everywhere, that the recording acts apply only to the instruments therein required to be recorded, and that the record or non-record has only the consequences prescribed. A law arising from custom can have no other effect, and in the nature of things there can be no custom of losing securities by omission to record. *Wing* v. *McDowell*, Walk. Ch. 175, 182; *Sparks* v. *Slate Bank*, 7 Blackf. 469; *Rangon* v. *McClellan*, 24 Ind. 165; *Read* v. *Cole*, 4 Ind. 283; *Bescher* v. *Baldy*, 7 Mich. 488; *Galpin* v. *Abbott*, 6 Mich. 17, 37; *Dalton* v. *Ives*, 5 Mich. 515; *Cook* v. *McChristian*, 4 Cal. 23; *Deminy* v. *Slate*, 23 Ind. 416; *Farmers' and Mechanics' Bank* v. *Bronson*, 14 Mich. 361; *Hall* v. *Redson*, 10 Mich. 21–23.

No custom to have the effect to reverse a maxim of the Common Law can exist in this Territory.

In *Cox* v. *O'Reilly*, 4 Ind. 368, it was held that a usage in conflict with plain and well established rules of law is not admissible in evidence in any case, and must be disregarded. A custom must be certain.

The doctrine of *bona fide* purchase, under registry laws, is the equity doctrine on that subject.

In *Wood* v. *Robinson*, 32 N. Y. 564, DENIO, J., said: "The expression in the statute (*bona fide* purchaser) is borrowed from the language of courts of equity, and must be interpreted in the sense in which it is there understood; and it is well settled that a grantee or incumbrancer who does not advance anything at the time, takes the interest conveyed subject to any prior equity attaching to the subject." *Thomas* v. *Graham*, Walk. Ch. 117; *Gremstone* v. *Carter*, 5 Paige, 421; *Dickerson* v. *Tillinghast*, 4 Paige, 215.

In *Waver* v. *Barden*, 49 N. Y. 291, where the claim of *bona fide* purchase was made by the defendant, ALLEN, J., said: "A purchase without notice of the plaintiff's claim alone, would not protect the defendant, and that something more than a good consideration, which would be sufficient as between the parties to the transaction, was necessary to shield him against the claim of the plaintiff."

The following authorities deny the sufficiency of a past consideration or an antecedent debt: *Root* v. *French*, 13 Wend. 570; *Butler* v. *Harrison*, Cowp. 565; *Padgett* v. *Lawrence*, 10 Paige, 170; *Cary* v. *White* 52 N. Y. 138; *Jennison* v. *Stafford*, 1 Cush. 168; *Weaver* v. *Barden*, 49 N. Y. 286; *Wood* v. *Robinson*, 22 N. Y. 564.

The following authorities hold an executory consideration insufficient: *Dixon* v. *Hill*, 5 Mich. 404; *Hardington* v. *Nicholls*, 3 Atk. 304; *Wigg* v. *Wigg*, 1 Atk. 384; *Story* v. *Lord Windsor*, 2 Atk. 630; *Tourville* v. *Naish*, 3 P. Wms. 306; *Warner* v. *Whittaker*, 6 Mich. 133; *Thomas* v. *Graham*, Walk. Ch. 117; *Blanchard* v. *Tyler*, 12 Mich. 339; *Stone* v. *Willing*, 14 Mich. 514–525; *Everts* v. *Agnes*, 4 Wis. 343; *Wormley* v. *Wormley*, 8 Wheat. 449.

The facts found in favor of the plaintiff not having been alleged, the plaintiff can have no benefit of them, for the relief must be founded on and confined to the allegations as well as the proof. *Hartog* v. *Tibbets*, 1 Utah R 328; *Battier* v. *Hinde*, 7 Pet. 252–274.

*Second.* The findings do not support the judgment, and the complaint does not cover the facts found.

It appears by the findings, that the note and mortgage were given for indemnity, and that there had been no damage or loss; hence there was no right of action on the note when this suit was brought. Sedgw. on Dam., 378, 379, 379; *Redfield* v. *Haight*, 27 Conn. 31; *Hodson* v. *Bell*, 7 T. R. 97; *Port* v. *Jackson*, 17 John. 239–479; *Thomas* v. *Allen*, 1 Hill, 145; *Wilson* v. *McEvoy*, 25 Cal. 169; Mayne on Dam., 244; *Ohio Life Ins. & Trust Co.* v. *Ruder*, 18 Ohio, 35-46; *Bishop* v. *Fetch*, 7 Mich. 371.

*Marshal & Royle*, for respondents.

There are some well established rules at law on this question of *bona fide* purchaser, to which we desire to call the attention of the court. In the case of a particular assignment to specified creditors for their security, they take as purchasers for value, strictly so-called, and not as mere volunteers, and if without notice are not bound by vendor's lien, and are entitled to same protection as other *bona fide* purchasers. Story Eq., vol. 2, § 1229; *Mitford* v. *Mitford*, 9 Vesey, 100; *Bayley* v. *Greenleaf*, 7 Wheat. 56.

A mortgagee is a purchaser *pro tanto.* Story's Eq., vol. 2, § 1502, note 2.

In the hands of creditors, without notice, a note taken as collateral is valid against equities. *McCarty* v. *Rods*, 21 How. U. S. 432; *Swift* v. *Tyson*, 16 Peters, 1–20, *et seq.*; Parsons on Notes and Bills, vol. 1, p. 223, and cases cited in notes.

The rule in equity is that between two parties having equal equities, the prior equity prevails, but if the party having sub-

sequent equity first clothes himself with legal title without notice, he must prevail. *Newton* v. *McLean*, 41 Barbour, 285.

A judgment creditor, with lien, takes precedence of holder of unrecorded deed. *Semple* v. *Bard*, 7 Serg. & R. 293.

A deed made pursuant to a prior parol promise is not a voluntary conveyance, and cannot be impeached as such by subsequent judgment creditors. *Dygert* v. *Ramerschnider*, 32 N. Y. 629.

Appellant claims that the plaintiff has not in its complaint sufficiently set forth the facts upon which it claims that its mortgage was prior to the lien or claim of the defendant Neslin. This position of appellant is fully and completely overthrown by the California decisions. *Poett* v. *Stearns*, 28 Cal. 226; *Anthony* v. *Nye*, 30 Cal. 301; *Himmelmann* v. *Spanagel*, 39 Cal. 391.

BOREMAN, Justice, delivered the following opinion of the court:

Defendant (Smith) bought of appellant (Neslin) a parcel of ground in Salt Lake City. He paid a portion of the purchase money, and gave Neslin a mortgage to secure the residue, and Neslin gave him the possession. Some months afterwards Smith became indebted to the respondents for $17,000, and they desired security. He asked Kerr to indorse for him, offering to secure Kerr in part by mortgage on the property referred to, claiming that there were no liens or other incumbrance on it.

Smith had now been occupying the property for some months, and the record showed the title to be in him, the Neslin mortgage not having been recorded or filed for record, nor did Kerr know of its existence.

Under these circumstances Kerr endorsed the note of Smith for $17,000, and Smith afterwards complied with his agreement by giving his note to Kerr for $13,000, and giving a mortgage on the property to secure Kerr the payment of the note. The residue of the $17,000 was otherwise secured.

Kerr had his mortgage recorded, and thereafter, on the same day, the appellant (Neslin) had his mortgage also recorded.

Kerr transferred this note and mortgage, which he had received from Smith, to respondents. Smith having failed to pay the amount secured thereby, the respondents bring this suit to foreclose.

Default was entered against Smith, who never appeared to the action; but Neslin filed answer, setting up his mortgage, and claiming that it was entitled to priority over the Kerr mortgage, etc. The court below gave judgment for the respondents, and thereupon Neslin appealed to this court.

The mortgagees in both of these mortgages acted in good faith in taking their respective mortgages.

The appellant maintains that the note in question was given to indemnify the payee therein against loss upon another note —that no loss has occurred, and that, therefore, no cause of action exists on the note thus given to indemnify.

This is plausible upon its face, but we do not think that it is the law. It seems to be indisputably settled that an indorser, holding securities from the maker of a note, may transfer these securities to the payee, who can, upon failure to pay the note indorsed, proceed to make the money out of the securities before suing upon the note. If such securities happen to be other notes and mortgages this does not change the rule. 1 Hilliard on Mortgages, p. 345.

In the case before us the evidence shows that the $17,000 was not paid. The payees of this note, therefore, had the right to exhaust the security delivered to them by the indorser before proceeding upon the note. It was not necessary for Kerr to pay the original note of $17,000 before this could be done.

Kerr acted in good faith in taking the note and mortgage. They were to secure him against loss. His indorsement of the $17,000 note was a valuable consideration, and the indorsement and the giving of the mortgage were intended to be as parts of one and the same transaction, to be performed at the

same time. That there was a delay in the execution of the mortgage was not due to anything that Kerr did. He gave no extension of time, and this arrangement contemplated no delay. The mortgage, therefore, was not given to secure an antecedent debt as understood in the books. There was no subsequent arrangement to give security for a past consideration. *Bona fide* purchasers, without notice, are favored in equity. Story's Eq. Juris., §§ 108, 165, 381, 434, 436.

It is claimed that the Neslin mortgage, being of prior date to the one sought to be foreclosed, should have the priority. If no other question than that of the date were involved in settling the priority, the Neslin mortgage would take precedence. But there is another question: Neslin waited a year after receiving his mortgage before he put it upon record. The Kerr mortgage had then been recorded. The appellants, however, maintain that the recording made no difference, as no statute required it. Neslin deemed it advisable, after the other mortgage had been recorded, to have his also, on the same day, recorded.

At common law, down to the time of Charles, the Second, no writing was necessary to pass title to land, but the form of conveyance was by an actual or symbolical livery of seizin. Afterwards, in carrying out the intention of the parties, it became customary to make written deeds, but these did not obviate the necessity of livery of seizin. 3 Washburn's Real Property, 603-4.

This livery of seizin was necessary in order " to prevent subsequent and fraudulent pledges of the same land." 2 Bl. Com. 160. And it was retained as a public and notorious act that the country might take notice of the transfer of the estate. 2 Bl. Com. 311.

Afterwards, the system of recording was adopted to take the place of livery of seizin, and it is recognized as having the same effect. Bouvier's Law Dic., title " Livery of Seizin."

But, in most of the States, registration is not essential to

passing the estate, but as a substitute for livery of seizin, it is only intended to give notice. 1 Gr. Ev., § 573, note 3.

In this country the recording of deeds has generally taken the place of livery of seizin, and the latter has been dispensed with either by usage or by statute. 1 Washburn's Real Property, 14, 15.

In Utah livery of seizin is unknown. No statute has expressly abolished it, but by usage it is dispensed with. Why dispensed with? Simply because the public have recognized the recording system as its substitute.

The Territorial statutes in force at the time of the execution of the mortgages in question, authorized the recording of such paper but did not require it, just as Greenleaf, as above quoted, says is the rule in most of the States. Our Territorial statutes required the establishment of recorders' offices in every county, and required record books to be kept therein, in which the recorders should record deeds and other writings. Compiled laws of Utah, § 216 to 219. These books were open for the recording of mortgages as well as other transfers, and they were of the character of public official registers. 1 Greenleaf's Ev., § 496. And such books are, as the law says, entitled to an extraordinary degree of confidence, and are admissible in evidence, by reason of the credit due to the officer, and of the public nature of the documents themselves. 1 Gr. Ev., § 483.

It would seem, therefore, that they were of sufficient importance to put parties upon inquiry as to their contents, and to give constructive notice of what was upon record. Constructive notice exists when a party, by any circumstance whatever, is put upon inquiry. Bouvier's Law Dic., title "Notice."

At the time the mortgages in question were executed, it was a common thing, one of public notoriety, to record mortgages and other conveyances, and the fact that there were offices in each county for the purpose of making such recordations, was also a matter of public notoriety. Under such circumstances, it would seem that common prudence would

have dictated to Neslin that his mortgage should be recorded, and thus, as far as he could, give public notice of his lien. Such recording would have been constructive notice to Kerr, and this contest, would have been avoided.

The American doctrine, " universally held, is that the registration of a conveyance operates as constructive notice to all subsequent purchasers of any estate, legal or equitable, in the' same property." Story's Eq. Juris. §§ 401, 402, 403, 404; 4 Kent's Com. 174, (side page,) note " D."

Neslin failed to give such constructive notice. He was, therefore, negligent of his duty, and his lien should be postponed to the subsequently acquired rights of the respondents. His equity was not equal to that of the other mortgagee, and his own negligence has lost him his precedence. *Bayly* v. *Greenleaf*, 7 Wheat. 46.

We are therefore of the opinion that the judgment of the court below was right, and it is therefore affirmed, with costs.

SCHAEFFER, J., concurs.

EMERSON, Justice, dissented and delivered the following dissenting opinion:

I am unable to agree with a majority of the court in this case, and file the following reasons for dissenting therefrom:

On the 5th day of July, 1873, the defendant, Smith, made a note of $17,107, the amount of his indebtedness to the respondents, payable to the order of John W. Kerr sixty days after date. Kerr indorsed the note for Smith's accommodation; Smith then promising to execute afterwards a mortgage for Kerr's indemnity. The note and mortgage on which this action was brought, were made by Smith at Kerr's request, on the 27th of September following, for the purpose of such indemnity.

Although the note, to which the mortgage sought to be foreclosed by this action is collateral, contains an absolute promise to pay $13,000 sixty days after date, yet it could not, between the immediate parties, have been enforced, except on

the happening of a loss against which it was intended as a security. The law is now well settled, that however absolute a deed or other instrument, it may be shown by parol to have been intended as a security. *Atwater* v. *Emerson*, 7 Mich. 12; *Strong* v. *Stewart*, 4 John. Ch. 167; *Ryan* v. *Walker*, 1 Wis. 527; 6 John. Ch. 417; 46 N. Y. 609; 2 Whart. on Ev., § 1031, 1032.

Between Smith and Kerr the sum stated in the note is like a penalty with a parol condition or defeasance, to pay any loss Kerr might sustain by reason of the indorsement.

The second finding of the court below is " That the consideration for the note and mortgage sued on by the plaintiff, was the indorsement by John W. Kerr of a certain note, made by the defendant Charles F. Smith, on the 5th day of July, A. D. 1873, for the sum of $17,107.10, which note was made payable to said Kerr in sixty days from date, and was to bear interest at the rate of one and one-half per cent. per month, and that said Kerr indorsed said $17,107.10 note on the 5th day of July, A. D. 1873, upon the request of said Smith, and *upon his promise* to execute and deliver to him the *note and mortgage sued on* by the plaintiff, as part of one and the same agreement."

There is no evidence in the record that any note was promised, nor that any mortgage was to be made except for Kerr's indemnity. The note and mortgage which were made did not, therefore, literally conform to the agreement, and the last clause of the finding appears to .be entirely unsupported by proof. Had Smith merely given a mortgage conditioned to save Kerr harmless, and this finding had referred solely to such a mortgage, it would have been correct; but this finding does not notice the conditional nature and effect of the instruments in their inception; they are treated as being legally absolute according to their face, as though they were valid and binding when made for the payment of $13,000 in sixty days. When they were made in September . there was a sufficient executed consideration to support a mortgage for Kerr's con-

tingent loss, and it does not appear that Smith or Kerr intended the securities to have any other operation.

Hence, the finding above quoted does not accurately state the transaction as disclosed by the evidence.

The answer of the appellant, Neslin, truly sets forth the consideration and purpose for which these instruments were made, and that the respondents had notice thereof. The respondents are found to be entitled to have judgment according to their literal reading; that is, for principal and interest from date, as for an actual debt. Kerr would not be entitled to such a judgment, nor would the respondent, except on the footing of a *bona fide* holder. On that subject there is no finding, and obviously for the reason that the court below treated the note and mortgage as absolute in their inception; in the hands of Kerr, as well as in the hands of the respondents; hence, it is apparent that the respondents obtained judgment without being required to show the *bona fides* of their purchase.

The errors of law and fact in the second finding led to this result, and this alone would necessitate a reversal; for there is a recovery where no cause of action existed between the original parties, and in the absence of any fact found which would give the respondent a right of action when none existed in favor of Kerr. But other points remain to be considered.

The mortgagor makes no defense; but Neslin, who is made a defendant on the general allegation that he has, or claims to have, some interest in or claim on the mortgaged premises, answers the complaint, and sets up an earlier mortgage, given November 27, 1872, by the same mortgagor, for $7,000, shown by the evidence to be purchase money of the mortgaged premises. It bears interest from March 1, 1873, at the rate of one and one-half per cent. per month until paid, and secures also $300, attorneys' fees, amounting, at the time this decision is made, (August 5, 1878,) in all to $14,037.50. This mortgage is held by the court below to be subsequent and subordinate to the mortgage held by the respondent. It will be

4

noticed that it is prior in date; and this fact gives the holder a right to prior satisfaction, unless his lien is intrinsically defective, or unless he has done some act, or is guilty of some neglect which by law or equity, has the effect to postpone him.  *Rankins* v. *Scott*, 12 Wheat. 177.

The only ground on which it is claimed that Neslin lost priority, is his omission to record his mortgage until after the mortgage held by the respondents had been made and recorded. To determine that this omission has this postponing effect, we must hold that he was under a legal or equitable obligation to record his mortgage, and that the respondents are in a situation to claim preference on account of the neglect.

It is conceded that in 1872–3 there was no statute in this Territory which expressly required the recording of mortgages; and none which defined the consequences of an omission to record, nor what advantages any other mortgagee would derive by superior diligence in recording such securities.

A recorder's office had long been established under Territorial statutes, and the recording of certain instruments, other than mortgages, was expressly provided for, and, to some extent, regulated.   The testimony also shows that there were record books kept for the recording of mortgages; that mortgages were in fact recorded; but no uniform or even general custom to record them.   Under these circumstances it cannot be held that there is a statutory requirement to record as a part of the ceremony of creating a valid incumbrance; nor is any such claim made.   It is well settled, that recording acts apply only to such instruments as the law by general or special terms requires to be recorded; and statutes which are only permissive in their language, and which do not declare the record to be notice, are not mandatory, and the record will have no other effect than that prescribed.   *Boyd* v. *Schlessinger*, 59 N. Y. 301; *Cook* v. *McChristian*, 4 Cal. 23; *Farmers' & Mechanics' Bank* v. *Bronson*, 14 Mich. 361.

The respondents' claim on this point is, that there being a

recorder's office, and a usage to record mortgages, the appellant was wanting in diligence. But unless the statute made the record notice, the party recording it would derive no advantage from its being recorded, and no subsequent purchaser or incumbrancer would be affected by it. It may, however, be contended that if a mortgage is recorded, a party dealing with the property afterwards would be warned by actual inspection of the record; and therefore Neslin, by omitting to record his mortgage, withheld information which it was his duty in this way to communicate, and should now be estopped from asserting a prior lien, which he failed to declare, to the prejudice of a subsequent mortgagee having no knowledge of it. The requisite facts do not appear in such a case to create an equitable estoppel. There being no duty to record the mortgage, there was no silence when there was a duty to give information. In this case, however, it does not appear that either Kerr or the respondents suffered any prejudice at all as the consequence of Neslin's failure to record his mortgage; neither appear to have consulted or acted upon the record. Kerr did the act against which the mortgage was given as an indemnity, on Smith's promise to give a mortgage, and on his assurance that the property was unincumbered. The diligence, therefore, which the respondents insist upon would have been unavailing, and, consequently, the want of it not detrimental.

Unrecorded instruments are good, even under recording laws, between the parties, and they are good as against all others who are not expressly exempted from their effect.

No party can be exempted in this Territory, under the laws existing prior to 1874, except upon equitable grounds; but in equity one party cannot obtain relief against another for not doing an act which he was under no obligation to perform, nor unless it appears that not doing it was injurious.

" If a statute prescribed that an unrecorded mortgage should be void as against a subsequent purchaser or mortgagee for value, without notice, the court would have no option but

to pronounce accordingly when such a case is presented. But in the absence of such a statute a court is not warranted in holding an unrecorded mortgage void when it does not appear that the record was consulted, nor that any subsequent dealing with the property was at all influenced by the state of the record.

Recording acts are intended to protect only *bona fide* purchasers and incumbrancers who have paid value. Neither Kerr nor the respondents are entitled to any preference in that character.

" The term *bona fide* purchaser is borrowed from equity jurisprudence, and must be interpreted accordingly, and it is well setted that a grantee or incumbrancer, who does not advance anything at the time, takes the interest conveyed subject to any prior equity attaching to the subject. *Wood* v. *Robinson*, 22 N. Y. 564. A good consideration in a general sense is not sufficient. *Weaver* v. *Borden*, 49 N. Y. 291. Neither a past consideration as a precedent debt, when there is no change in the debt, surrender of securities or the like. *Weaver* v. *Borden*, 46 N. Y. 286; *Cary* v. *White*, 52 N. Y. 138. Nor an executory consideration, to be paid on performance in the future. *Wormly* v. *Wormly*, 8 Wheat. 421; *Dixon* v. *Hill*, 5 Mich. 404; *Worms* v. *Whittaker*, 6 Mich. 133; *Blanchard* v. *Tyler*, 12 Mich. 339; *Stone* v. *Welling*, 14 Mich. 514.

Value must be paid at the time, on the faith of the purchase or the security.

When the mortgage to Kerr was made he paid nothing; he had already endorsed for Smith, relying on his verbal promise for security. See *Dusenbery* v. *Holbert*, 59 N. Y. 541.

The testimony fails to satisfy us that when the note and mortgage were delivered to the respondents, there was any granting of time or other contemporaneous considerations; they were delivered simply as collateral security for a debt which the respondents deemed already well secured.

There is no more reason to suppose that the delay for the

first sixty days, any more than for the ensuing five months, was by agreement, based on the receipt of this mortgage.

In my opinion the decree should be modified so far as it determines that the respondents' mortgage is entitled to priority. It should be so modified as to require the application of the proceeds of the sale: *First*, To pay the costs of the appellant in this court and in the court below, with the costs of sale. *Second*, The amount due to appellant Neslin on his said mortgage; and, *Third*, the respondents' mortgage and their costs.

Thereafter, counsel for appellant moved the court for findings, preparatory to an appeal to the Supreme Court of the United States. After argument the motion was allowed, and the Supreme Court decided to file findings.

BOREMAN, dissenting, filed the following dissenting opinion on motion for findings in this court:

I am unable to agree with the majority of the court in the allowance of this motion. The motion came too late. The judgment which the findings are sought to support, was rendered at the June Term, 1878, of this court, and an appeal was taken therefrom and perfected at that time to the Supreme Court of the United States. This motion was not filed until the June Term, 1879, of this court, a year after the cause had been transferred to the Supreme Court of the United States. The cause was then and is now pending there, and not in this court. There is, therefore, no authority in this court now to make findings. *Baggs* v. *Smith*, 53 Cal. 88.

Jurisdiction cannot exist in two courts at the same time for the same purpose. This is the general and well settled rule, and I know of no authority for departing from it.

This is not a proceeding to enforce a judgment, and hence we cannot invoke the rule of practice which gives the right to enforce in the lower courts, judgments appealed from when the judgments are not stayed.

The only authority which this court has for making findings

at all, is to be found in the Act of Congress entitled, "An Act concerning the Practice in Territorial Courts, and Appeals therefrom," approved April 7, 1874, and the act contemplates the making of findings before and not after appeals. At least, it nowhere authorizes the violation of the general rule, which prohibits findings after appeal. It says that the statement shall be "transmitted to the Supreme Court, together with the transcript of the proceedings and judgment or decree."

I do not think that it signifies anything for this court to say that it does not pass upon the validity or invalidity of the findings or statement. The granting of the motion does do this; and it seems to me that this court cannot afford to occupy the position of allowing the motion for findings, and yet saying that it does not decide whether its action is valid or invalid. I see no authority for granting the motion, and think that it should have been overruled.