CYNTHIA SHELDON and ANNA MARIA ANABLE, Respondents, *v.* HENRY EDWARDS, Appellant.

Where personal chattels are mortgaged, and subsequently attached to the freehold, under circumstances showing that, as between the parties, they are to be considered personal chattels still, a transfer of said mortgage, after the chattels have been thus attached, together with a purchase of the equity of redemption by the assignee, transfers the title to such mortgaged property.

In equity, merger never takes place, when the requirements of justice, or the intentions of the parties, demand that it should not.

Where there is a general judgment on an issue in bar — though, under the Code, there is also an issue in abatement — the parties will be estopped from litigating further the merits of the former issue, while such judgment is in force.

ACTION in the nature of an action on the case, to recover of the defendant the value of certain machinery, removed by the defendant from premises in the town of Ephratah, in the county of Fulton, upon which the plaintiffs had a lien by way of mortgage. It was tried by a justice of the Supreme Court, without a jury, at the Fulton Circuit, in April, 1859. The plaintiffs recovered, and the judgment was affirmed at General Term, in the 4th district, Justice BOCKES dissenting.

The facts of the case, as found by the justice who tried the cause, are substantially as follows: On the 2d of March, 1853, Conrad Van Curen owned the premises in question, and on that day conveyed them to Florinda G. Anderson, the wife of Samuel H. Anderson. On the same day Anderson and wife gave to Van Curen a mortgage on the premises, to secure the payment of $1,300, in five years.

On the 20th of October, 1853, Florinda G. Anderson and Thomas J. Chapin gave to Van Curen a chattel mortgage, not under seal, upon two water wheels and sundry other fixtures for a paper mill, to secure $1,000, which was duly filed in the town clerk's office of the town of Ephratah, where the mortgagors resided. Afterward, in the year 1853, the said mortgaged chattels were, with the knowledge of Van Curen, placed by Mrs. Anderson upon the mortgaged premises, and affixed thereto in such manner that they could not be sepa-

rated therefrom without injury to the freehold, and so continued until they were removed by the defendant. The property included in the chattel mortgage is the same mentioned in the complaint in this action as one paper machine and cutter, two presses, two water wheels and shaftings, one steam boiler, and three paper mill engines.

After the 2d of March, 1853, and during that year, Mrs. Anderson also placed upon said premises, and permanently affixed thereto, so that they could not be removed without injury to the freehold, a stack of chimneys and steam pipes, a force pump and shafting, a pulp chest, two leach tubs, and an iron-bound trunk mentioned in the complaint, and they so remained until removed by the defendant.

On the 11th of October, 1854, Van Curen filed a copy of his chattel mortgage, in the clerk's office, with a statement that $1,066.47 was due thereon on the 2d of October, 1854, and thereupon advertised the property included in the mortgage for sale on the 7th of November, and adjourned the sale to the 8th of November, 1854, and on that day Van Curen sold to the defendant, and, for $1,093.89, paid by the defendant, assigned the chattel mortgage to him.

At the same time, Mr. and Mrs. Anderson and Chauncey North executed, under their hands and seals, a writing for value received, by which they sold and assigned to the defendant the property mentioned in the chattel mortgage, described as being in the paper mill on said premises; and also all other machinery in said mill or on said premises.

On the 10th of February, 1855, Van Curen, for a valuable consideration, assigned to the plaintiffs the mortgage upon the real estate, no part of the principal or interest thereon, after the 2d of March, 1855, having been paid.

On the 1st of March, 1855, Florinda G. Anderson gave to the defendant a quitclaim deed of the mortgaged premises, under which he took possession, and effected an insurance upon the machinery in the mill for $1,500.

In May, 1855, the paper mill on the mortgaged premises was destroyed by fire, and the premises thereafter became an

insufficient security for the mortgage debt, and Mr. and Mrs. Anderson were both insolvent, and so still continue.

The defendant knew of the existence of the real estate mortgage and of the insolvency of the Andersons, and of the inadequacy of the premises to secure the mortgage debts, and, after the fire in the year 1855, removed from the mortgaged premises the property mentioned in the complaint, and converted it to his own use, and it was worth $1,500.

The defendant also received, under his policy of insurance, $850, for damage done to the machinery in the mill by the fire.

On the 17th day of July, 1856, the plaintiffs commenced a foreclosure of the real estate mortgage, by advertisement, under which the mortgaged premises were sold to Cynthia Sheldon for $300, on the 13th day of September, 1856, and in the year 1857 the plaintiffs commenced an action in the Supreme Court against the defendant, to recover damages for the removal from the mortgaged premises of the same property mentioned in the complaint in this action. The action was referred to Daniel Cady, and tried and judgment rendered for the defendant on the 27th of May, 1858.

Afterward, proceedings for the foreclosure of the said mortgage were again commenced, and on July 16, 1858, the premises were sold to Cynthia Sheldon for $300, which was the fair value of the premises. The costs were $58.05. The amount due on the mortgage was $1,611.97, and, after applying the proceeds of sale, there still remained due the sum of $1,361.97 on the 16th of July, 1858.

Upon these facts a judgment was ordered for the plaintiffs for the amount due on the mortgage, interest and costs. Defendant appeals.

The case was submitted upon printed arguments.

*A. McFarlan* and *J. H. Reynolds*, for the appellant.

*A. Loomis*, for the respondents.

PECKHAM, J.   The first question arising here is, did title
to the machinery mentioned in the chattel mortgage to Van
Curen, transferred by him to the defendant after the chattels
had been attached to the freehold, pass to the defendant by
such transfer?   I think it did.   This machinery was pur-
chased for the mill, where it was attached and used.   Just
before it was affixed, Van Curen, who then held the mort-
gage upon the premises to which it was affixed, took a
personal mortgage upon it.   This mortgage was taken in
October, 1853.   In October, 1854, he continued the mort-
gage in life by filing a statement of the amount due, and
on the 8th of November, 1854, he was proceeding to sell
this machinery, pursuant to advertisement, under the chattel
mortgage, when he met the defendant and sold the chat-
tel mortgage to him.   In order that there might be no doubt
as to the title, the defendant also, at the same time, took a
bill of sale from Mrs. Anderson, the owner of the fee of the
premises and the mortgagor in the personal mortgage of
the same machinery, her husband and one North joining
therein.   The transfer of the personal mortgage, and the
giving of the bill of sale, were all one transaction, executed
at the same time, on the 8th of November, 1854.   The
defendant paid therefor to Van Curen, the mortgagee in the
chattel mortgage, the amount secured by the chattel mort-
gage.   As between mortgagor and mortgagee of real estate,
it may well be conceded that this machinery, after it was
affixed, became real estate; but it was, in my judgment, of
such a character, so near the border line, that the parties
interested might, by agreement, make it personal property,
as they clearly did, if in their power to do so.   Van Curen,
mortgagee in the real estate mortgage, covering the mill, and
mortgagee in the chattel mortgage, Mrs. Anderson, owner of
the equity of redemption, and the defendant, the purchaser,
all treat this as personal property, and the defendant pays
his money for it to Van Curen.   As between those parties, it
thus became personal property.

In *Smith* v. *Benson* (1 Hill, 176), it was also held, that one
deriving title from a person who had previously mortgaged

a building erected on another's land as personal property, was not in a situation to insist, as against the mortgagee, that it was part of the freehold. Mr. Justice COWEN remarked, in that case, that "the law often implies an agreement of nearly the same character from the relation of lessor and lessee, and surely the parties may, by express agreement, do the same thing, and even more. If they agree, in terms, that a dwelling house shall, as between them, be considered strictly as a personal chattel, it takes that character." (See *Smith* v. *Jenks*, 1 Denio, 580; affirmed as to this point, 1 Comst., 90; *Mott* v. *Palmer*, id., 564.) In this case it was held that rails built into a fence on land became personal property, as between the parties, or by agreement between the owner of the land and the tenant, and that the latter might remove them when he left. (*Godard* v. *Gould*, 14 Barb., 662.)

In *Ford* v *Cobb* (20 N. Y., 344), the broad rule laid down by Mr. Justice COWEN was properly qualified, still leaving it sufficiently extended to include the case at bar.

As between Van Curen and the defendant, I have no doubt the property described in the chattel mortgage was personal property, and might be taken and sold under that mortgage. Van Curen clearly could maintain no action against him for such taking. If Van Curen could not, his assignees, the plaintiffs, stood in no better position. They became assignees of Van Curen of the real estate mortgage on the 10th of February, 1855, subject, of course, to all equities then existing as against Van Curen. They stood in his place. Having no right, under that mortgage, to the property in the chattel mortgage, he could convey none. (*Bush* v. *Lathrop*, 22 N. Y., 535; *Mott* v. *Palmer*, 1 Comst., 514.)

It is insisted, however, that, by the purchase of the equity of redemption of the premises on the 1st of March, 1855, the defendant lost all right to the property by virtue of the personal mortgage; that all rights under the personal mortgage became merged in his title to the fee; and this was so held by the Supreme Court.

Justice between men is the aim of the law. Courts have adopted various fictions to promote justice — never to defeat

it. If the effect declared be in reality the legal result of the defendant's purchase of the equity of redemption, the purpose of the law would seem to have failed in this instance.

Defendant purchased the chattel mortgage on the 8th of November, 1854. On the 10th of February following, the plaintiffs purchased the real estate mortgage, and on the 1st of March thereafter, the defendant purchased the equity of redemption. The plaintiffs cannot be said to be *bona fide* purchasers of this mortgage, in any sense, in reference to the act of the defendant in obtaining title to the equity of redemption. They could not have relied upon that act in their purchase, as it had not then occurred. It, therefore, in no sense, influenced their purchase. Is it clear that the doctrine of merger has any application to this case?

The defendant, by virtue of the assigned chattel mortgage, had a lien on the property specified therein, as *personal property*, discharged from the lien of the real estate mortgage. He also obtained a release thereof, as personal property, from the then owner of the equity of redemption. He held it as personal property. Then he purchases the real estate. What lesser estate is there here to be merged in a greater? None. True, on a sale by defendant, as between vendor and vendee of the premises, the personal property attached to the freehold might all pass. So, also, if he had given a mortgage thereon, the effect would be the same, not because there was any merger, but simply because such a deed or mortgage, as between grantor and grantee, or mortgagor and mortgagee, would include such property, no matter how the title had been obtained by the defendant. But, as between these parties, plaintiffs being simply the assignees of Van Curen, we have already seen that they had no right to that property under their assigned mortgage prior to defendant's purchase of the equity of redemption; and, as against them, he might still hold this as personal property.

Assume, however, that all the rules of law in cases of merger apply to this case, I think the result is the same. No merger is found in the case at bar, as a fact. It has been held at law that, when different estates meet in the same person,

the lesser is merged, as a general rule, in the greater, but that a different rule prevails in equity. In equity, it depends upon the intention of the party holding the estates. If he has an interest to keep the mortgage alive, it will be held not to have merged.

In *Stave* v. *Ellis* (6 J. C., 393), Chancellor KENT declared that " a court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the party."

. In *Forbes* v. *Moffatt* (18 Vesey, 384), cited by the chancellor, the master of the rolls held, that a mortgage was not merged by union with the fee. There was no actual intention established by act of the party, and it was presumed against the merger, there, from the greater advantage in favor of the personal representative.

In *Millspaugh* v. *McBride* (7 Paige, 509), the purchaser of the equity of redemption took an assignment of a senior mortgage, and, upon foreclosure upon the junior mortgage, it was held that the senior mortgage was not merged, but was entitled to priority of payment out of the proceeds of the sale. Merger is not favored in equity, and is not allowed, unless for special reasons, and to promote the intention of the party. (4 Kent Com., 102, 5th. ed.)

The defendant is entitled, in this case, under the Code, to the benefit of any equitable defense, to the same extent and in the same manner as if this suit had been pending in equity. (See, also, *Clift* v. *White*, 2 Kern., 519.)

Here, quite clearly, the interest of the defendant required that there should be no merger. He purchased the equity of redemption, but he never agreed to pay the real estate mortgage thereon, nor to make the property in the personal mortgage liable therefor. In principle, or, rather, in analogy, the case of *Millspaugh* v. *McBride* (*supra*), entirely controls this. The only difference in the cases is, there the equity of redemption was purchased first, the mortgage afterward. Here the mortgage was purchased first.

There is nothing in the case in conflict with the presumption that the defendant took the property in the chattel

mortgage mentioned, by virtue thereof, as he lawfully might.

This disposes of the property included in the chattel mortgage.

Was the former suit, and judgment thereon, a bar to this action? That depends upon the single question, whether it was a judgment upon the whole merits, or was confined to the point that the suit was prematurely brought.

The same defense, that the defendant had a right, under his title, to take the property as he did, was set up in the answer there, as it was in this suit. The facts were particularly found there, though not all, precisely as they are found in this suit. Judge CADY, acting as referee, then found, as conclusions of law, first, that Van Curen had a right to assign the chattel mortgage as he did, and that he thereby conveyed the property therein free from the real estate mortgage, and that the defendant had a right to remove such property accordingly. He further found, as matter of law, "that the assignment of the chattel mortgage, and the conveyance from Mrs. Anderson and others to the defendant, should be deemed as one transaction, and gave title to defendant to all the machinery in the mill, and the plaintiffs are not entitled to recover for any part of it." He also stated that "the defendant insisted" (although he had not pleaded) "that the plaintiffs had no cause of action against defendant when the suit was commenced; that, when the action was commenced, only one year's interest was due, and the mortgaged premises were more than sufficient to pay that interest. As conclusion of law, he found that a mortgagee could not maintain an action for an injury done to the mortgaged premises, if, when the action is commenced, the premises are worth more than is then due on the mortgage." He directed a "judgment to be entered against the plaintiffs for the costs of the action." Such a judgment was entered accordingly.

On these facts, there can be no dispute or denial that both issues were distinctly passed upon, found and adjudged. Upon the broad merit, it must be conceded that the defense was pleaded, the facts found and the law adjudged. Why,

then, was it not a bar to this action? It is said that, where an action has been dismissed, or a judgment given for the defendant, upon a preliminary point, before reaching the merits, it is no bar to another action. (*Hughes* v. *Blake*, 1 Mason, 515; *Estell* v. *Faul*, 2 Yerg., 467; 1 Mod., 207; 2 Wm. Bl., 831; 8 Johns., 442; *New England R. R.* v. *Lewis*, 8 Pick., 113; 3 Wils., 304.) No one can dispute the soundness of the rule. But have these cases, or the rule, any sort of application? If the preliminary point or issue alone were pleaded or presented in bar, the answer would be conclusive. But what answer can it present to the finding and judgment on the merits? It seems to me, none whatever. Take a plainer case: An action is brought upon a draft before the days of grace had expired. The defendant answers, first, that the draft was usurious; second, that it was paid; and, third, that the action was premature, the defendant being entitled to grace. The court found each issue for the defendant, and directed judgment accordingly, which was entered. Can any court assume to say that judgment was given upon one issue more than upon another, when the record shows it was given alike upon all? Can it be denied that each of these issues was tried and adjudged? What court, then, can detract from the power or force of the consequences flowing from such judgment upon these issues? It is stated, in the prevailing opinion in the Supreme Court, that an estoppel, to be valid, must be mutual, and that, if these issues on the merits had been found the other way, and the complaint dismissed because the action was prematurely brought, there would have been no estoppel against the defendant from trying them again, if another action was brought. This seems plausible, but I think is unsound. It is the *judgment* upon the findings that makes the estoppel. If the judgment be one of nonsuit, or in the nature of nonsuit, and the action be dismissed, nothing whatever is adjudged in respect to a subsequent suit. It is no bar to anything. An action is brought on a draft, and the plaintiff, after evidence on both sides, is nonsuited, judgment of nonsuit entered and paid. The next day he brings the same action again, and succeeds; the former, of

course, being no bar. But suppose, instead of a nonsuit, the first had been a judgment for the defendant upon the merits, because he failed to prove defendant's handwriting: it is equally clear the judgment would be a bar, whether it was founded on the finding of a court or referee, or the verdict of a jury.

What is meant by an estoppel being mutual is, that the particular judgment is binding upon both, if obligatory upon either. The rule may safely be applied to the case at bar. The merits having been determined in the former suit, and judgment entered thereon, it is conclusive upon both parties until reversed. It is entirely mutual.

This court has held, that preliminary issues, and issues on the merits, may be legitimately presented in the same answer and tried at the same time. If they are so presented and tried, the ordinary consequences must necessarily flow from the findings and the judgment entered thereon. It is said that this would be embarrassing in practice. If this were true, under the Code, the remedy lies exclusively with the legislature. But there is rarely any necessary embarrassment. The court might dispose of the case upon the preliminary question, and receive evidence as to that first, in its discretion; or, if the plaintiff have any well-grounded doubt as to the soundness of preliminary defense, he had better discontinue, as he may, at any time prior to its submission to the court. Should he proceed and try that issue with others, and they should all, as in the case at bar, be found against him, and a general judgment be entered thereon, thus giving force and life to each finding upon each issue, he must appeal as to the issues upon the merits, if erroneously found, though he should be satisfied that the preliminary issue was properly found against him; otherwise, the judgment would necessarily be a bar to any subsequent action. If, upon appeal, he could satisfy the court that the trial court erred as to all issues upon the merits, the judgment would be corrected and made a judgment of nonsuit, or of that nature, and thus be no bar to any future action. If he failed as to any issue upon the merits, it would, as it

should, be the end of the controversy. There seems no sound reason why a judgment on an issue in bar, though it also embrace an issue in abatement, should not conclude the parties in all future controversies. If it do not, the provision of the Code, and the decisions of this court, allowing such issues to be made and tried at the same time, are of no force. Of what benefit to either party to try an issue, if the finding is of no consequence, and if the judgment thereon have no effect?

The law presumes it was properly tried; that all the facts bearing upon the issue were fully and fairly presented. Why, then, should it be retried?

If the preliminary issue involved the nonjoinder of parties, other questions might be presented in a subsequent action that are not in the case.

Another controlling view of this case: There was no plea in abatement or dilatory plea in their first suit. Every answer presented and every issue made was upon the merits exclusively, and they were all found for the defendant, and judgment entered thereon.

Such a trial and judgment might have been had before the Code, and it would have been a bar to all future actions, if disposed of on the merits, although it had appeared, on the face of the complaint, that the action had been prematurely brought.

Assuming that the case stands the same as if an answer of matter in abatement, as well as in bar, had been interposed, the result is the same as if the cause were disposed of upon the merits, and judgment entered accordingly.

This was so declared by Mr. Justice COMSTOCK, in *Sweet* v. *Tuttle* (14 N. Y., 465). He said: "A record showing that such a defense had been pleaded and tried would not be a bar in another action, unless it be made to appear that the plaintiff was defeated on the merits of the controversy."

Here the fact affirmatively appears, that the plaintiff was defeated upon the merits of a judgment entered upon the merits, Not a word of nonsuit or dismissal appears in the record.

TIFFANY — VOL. VIII.    37

It may not be material here, but my impression is very strong, that the action was not prematurely brought. It was not an action of waste, nor an action on the bond. It was unnecessary to prove foreclosure or sale, or that all legal remedy had been exhausted against the mortgagors, or that the mortgage was all due. It was simply an action on the case for destroying or making uncollectible the plaintiff's lien. (See *Yates* v. *Jay*, 11 Johns., 136.)

There was some property taken not included in the mortgage, the right to which may possibly not be disposed of by this decision; but, as a new trial must be had, if these views prevail, it is not important further to allude to that property. Judgment reversed, and a new trial ordered, costs to abide the event.

All the judges concurred, except HUNT, J., who read a dissenting opinion, and MORGAN, J., who did not vote.