## Case No. 4,989.

### FOUR HUNDRED AND TWENTY MIN. CO. v. BULLION MIN. CO.

[3 Sawy. 634;[1] 11 Morr. Min. Rep. 608.]

Circuit Court, D. Nevada. Nov. 8, 1876.

C. J. Hillyer, Delos Lake, and R. S. Mesick, for complainant.

M. N. Stone, John Garber, and R. H. Lloyd, for defendant.

SAWYER, Circuit Judge (after stating the facts). Upon the facts shown by the bill of complaint, the defendant insists that the right to the 420 feet of the Comstock lode in question, and, consequently, the right to the patent, appears in the bill to have been once directly put in issue, in an action between the same parties fully litigated and determined in favor of the defendant; and that the matter is res adjudicata, and a bar to further litigation. On this ground it is claimed that the bill shows no equity. After a careful consideration of the acts of congress set out in the statement of the case, it is clear to my mind, that it was the intention of congress to give the right of purchase of a mining claim, to a silver or gold bearing lode or vein, to the person or association of persons who, in pursuance of the laws of the state or territory and the local mining customs, rules and regulations of the place where located, recognized by the laws and enforced by the courts, is the owner and entitled to the possession as against everybody except the government of the United States. It will be seen that the act expressly refers to, and recognizes, the laws of the state or territory, the local customs, rules and regulations not in conflict with the laws of the United States, the decisions of the courts, and even, in express terms, the states and territorial statutes of limitation applicable to the subject. The act requires the party seeking a patent to file a diagram of the claim, and post a copy in a conspicuous place on the claim, together with a notice of intention to apply for a patent, and requires the register of the land office, also, to publish a notice of the same in a newspaper published at the nearest place, for ninety days. It then authorizes the adverse claimant, before approval of the survey, to file a protest, upon which all proceedings are stayed "until final settlement and adjudication in the courts of competent jurisdiction of the rights of possession to such claim, when a patent may issue as in other cases." That adjudication is to be had in the ordinary courts, and to be determined under the ordinary rules, regulations, customs, and laws of the locality. It seems impossible to come to any other conclusion, than that the party, who at the time can maintain his right to the claim in the courts of the country as against any person but the United States, under the local laws, customs, rules and regulations, is the party upon whom congress intended to confer the right to purchase, no matter how that right originated, if under such laws and customs and decisions of the courts he has the present right. And this is simply a right to purchase—a privilege given to the party, of which he may avail himself or not, exactly like a pre-emption law, and founded upon similar reasons and policy. And what this privilege is, is stated in the cases of Hutton v. Frisbie, 37 Cal. 479, and Frisby v. Whitney, 9 Wall. [76 U. S.] 191. The case is in no wise like the case of an inchoate, imperfect Spanish grant, but is in all respects like a case under the pre-emption laws. The object of a determination of the right by litigation where there is an adverse claim, is simply to ascertain the party who has the right to the claim under the laws of the state and local rules and customs; for that person, when found, is the party upon whom the law confers the privilege—the right to purchase. There is no bounty about it, for the party must pay for the land five dollars per acre and the cost of survey, which is more than double the price of ordinary public lands. Undoubtedly the price is often far less than the real value, and so it often is in ordinary pre-emption cases; but this fact in no way affects the principle upon which the law proceeds. Doubtless the object of conferring the privilege is to encourage explora-

tion of hidden mines, as the privilege in ordinary cases of pre-emption is to encourage settlement and cultivation of the public lands, for the purpose of developing the resources, and contributing to the general prosperity of the country.

If I am right in this view—and it really does not seem open to serious argument—then, in order to ascertain which party was entitled to a patent, it is only necessary to determine which party at the time of its issue was the rightful owner of the mining claim in question, as against everybody but the United States, under the laws, rules, customs and the decisions of the courts in force at the time in the locality embracing it without regard to the act of congress; for the act of congress remits the parties to these laws, rules and customs solely to determine their rights.

The next question is, whether, it appears, upon the averments of the bill, that the title to the mining claim in dispute, under the local laws and customs upon which it depends, has been once directly put in issue between the parties, and tried and determined in such manner as to become res adjudicata. If so, it ends the case. If not, it will be necessary to consider the other questions raised by the demurrer. After a thorough consideration of the question, I am unable to resist the conclusion that the title has been so put in issue, tried and determined as to become res adjudicata, and a bar to further litigation. That it was put in issue, and the facts found, there can be no doubt; and I do not understand that this proposition is controverted. But it is insisted that there was another issue, also found for defendant, upon which the judgment might have been rested, and still be correct; and that there was no occasion to pass upon the title, and no authority in the court to pass upon it; or if there was authority so to do, that it does not appear affirmatively that the judgment went upon that ground, and consequently there is no estoppel. The statute of Nevada, at the time of the commencement of the action, the record of which is made part of the bill, authorized a party in possession of land or of a mining claim to bring an action against any adverse claimant to determine his adverse claim. As that is the most favorable view for complainant, I shall assume, what the defendant denies, that the action in question was brought under, and depended upon, that provision of the statute; and that in case of a failure to prove possession at the time of the commencement of the action, the suit would necessarily fail on that ground, if on no other. The want of possession is not, strictly speaking, jurisdictional, for the court has jurisdiction to consider and determine the subject-matter. It is a technical dilatory objection in the nature of matter in abatement. It simply defeats the present action, without regard to the merits. The party out of pos-

session, upon this view, must first bring his action to get into possession; but this would not be a complete remedy against a party claiming title adversely. A recovery of possession might be had and the defendant still set up his claim, and make it necessary for the successful party to bring another suit to determine his adverse claim, and injoin his silence, even though the first judgment might be conclusive evidence of his right on the trial of the second action. Having recovered possession, he would then be in a position to maintain his further action to obtain a complete remedy. If he brings his action to determine an adverse claim while out of possession, the most that can be said is that his action is prematurely brought, and on this appearing it would be dismissed, as it would be one valid ground of defense to this particular action. The statute has since been amended, both in Nevada and California—and in Nevada the act passed pending this action—so that a party out of possession can now, at least, maintain the action. But conceding a want of possession at the commencement of the action to be one good defense, there may be several other good defenses, and section 1112 of the Compiled Laws of Nevada provides that "the defendant may set forth by his answer as many defenses and counterclaims as he has. They shall each be separately stated," etc. Thus all defenses, whether dilatory or to the merits, may be set up in the same answer and tried together. If it is admissible to set up several defenses in one answer, it must be competent for the court to try and determine them all. The law neither injoins nor permits a vain thing to be done. But it would be doing a vain thing to set up a defense which could not be tried when set up.

It may not be necessary to dispose of all the issues, and sometimes, doubtless, all are not determined; but it is certainly admissible to do so, and if properly tried and determined, I can see no good reason for not holding every issue so properly in fact tried and determined, to be finally and conclusively determined. Suppose the judge should be entirely satisfied that defendant's title is good, and so find distinctly, on that issue, without passing at all upon the issue as to whether defendant was in possession at the commencement of the action, either because the evidence on that point left it in doubt, or because, for any reason, he preferred to rest his judgment on the defendant's title—on the real merits of the case—can there be any doubt that the matter would be res adjudicata? If he is authorized to find the issue, without passing upon the other issue, and his determination would be res adjudicata, he is certainly authorized to pass upon it in connection with the other issue, and if so determined, it must have the same force as a determination in the other mode. The question must be: "Was the issue in fact determined?" In the case before tried, the

complaint of plaintiff alleged title in itself, possession at the commencement of the action, and an adverse claim on the part of the defendant, together with other matters. The defendant took issue directly on the allegation of title, and on the allegation of possession in plaintiff at the commencement of the action, but admitted making an adverse claim. Another answer, then, affirmatively alleged title in defendant itself, and as affirmative matter, also, directly alleged, in apt and proper form, an adverse possession during the period prescribed by the statute of limitations of Nevada, applicable to the subject. Thus the title of the plaintiff, his possession at the commencement of the suit, and the adverse possession of the defendant for the period prescribed by the statute of limitations to bar the action and vest the title in defendant, were each directly in issue, and each issue was in fact submitted by the parties and tried by the court without a jury. A special finding was filed, from which it appears exactly what was found, and, manifestly, all these three issues were found against the plaintiff. The court did not, in so many words, say in its finding that the plaintiff had no title, or, in so many words, that the plaintiff was not in possession at the time of the commencement of the action, but it found facts which necessarily showed that plaintiff had no title, and that defendant had title; and it found in express terms, in so many words: "That the agents of defendant, in the year 1865, forcibly ejected from the mining ground in dispute in this action, the persons mentioned in finding three, as working thereon for the 420 Company, and from that time until the commencement of this action, and until the trial, the defendant has been in the actual, exclusive and uninterrupted occupation and possession of all the mining ground in dispute in the action aforesaid, claiming title thereto, and claiming the same adversely to the plaintiff."

From the finding of the fact of adverse possession of defendant since 1865 it inferentially or argumentatively appears that the plaintiff could not have been in possession at the time of the commencement of the action. The court adds, as a conclusion of law, that the defendant is entitled to judgment, as prayed in the answer, and orders judgment accordingly. Upon these findings a judgment for the defendant, in the usual and proper form of a judgment on the merits, was entered, wherein, after reciting the filing by the judge of "his findings of the facts herein in favor of the defendant," "it is ordered and adjudged that the plaintiff is not entitled to any of the relief prayed for in the complaint, and that it take nothing by its action," and adjudged costs. This is certainly an appropriate judgment upon the finding on the issue as to adverse possession, and more appropriate to this issue than upon a finding merely against possession in the plaintiff at the time of the commencement of the action. It is not a judgment of nonsuit, or a judgment in form upon a plea in abatement, or a judgment in any manner without prejudice, but apparently and in form a judgment on the merits. As a matter of construction of the findings, and judgment, I also think it manifest that the judgment was intended by the judge to be based, and that it is based, upon the finding of adverse possession in the defendant for a period prescribed by the statute of limitations for barring the action and vesting title in the defendant, and on title in the defendant. The judge finds in express terms on that issue, and makes it the prominent finding in the case; while he does not find expressly on the issue as to the possession of plaintiff at the commencement of the suit, but omits to say anything about that distinct issue presented on the allegation of the complaint.

It is only inferentially and argumentatively that we ascertain the fact of want of possession of the plaintiff at the commencement of the suit, from the finding of adverse possession in the defendant for a period covering the date of the commencement of the suit, on the affirmative issue tendered by the defendant in setting up the statute of limitation. It is evident from this, and from the fact that the judgment is appropriate to the finding, that the judge proceeded especially upon this finding in adjudging the matter in controversy—that he intended to put his judgment upon the merits of the case and not upon the matter of abatement—or matter not touching the merits, which only defeated the present action. Suppose this ninth finding had been omitted, there would be no finding at all upon the issue as to whether the plaintiff was in possession at the commencement of the action. Or, suppose, on appeal from an order denying a motion for a new trial the supreme court had reversed the order as to the ninth issue only, finding adverse possession for the period specified, on the ground that it was not supported by the evidence, there would be no other finding showing that the plaintiff was not in possession at the time of the commencement of the action, upon which the judgment could be sustained. The supreme court of Nevada, under the practice that prevails in that state, only exercises appellate jurisdiction. It could not set aside a verdict on the issue as to adverse possession, and itself investigate the question anew, and make for itself another finding that plaintiff was not in possession at a particular date—the date of the commencement of the suit—and on its own finding sustain the judgment. Non constat, that the court below would find on the evidence that there was no possession at that date, if the evidence was insufficient to show an adverse possession for the whole period found. The supreme court would, upon vacating the ninth finding, necessarily remand the case for a new trial on these issues. Had there been a tenth finding, that the

plaintiff was not in possession at the time of the commencement of the action, the judgment might be sustained on that finding, upon the hypothesis I have assumed for the purpose of the argument, even upon a reversal of the ninth finding. Thus it appears that the judgment of the court must rest upon the ninth finding, which was evidently intended to be, and is, a finding on the issue of adverse possession, and only inferentially and argumentatively shows that it "includes the time at which the suit commenced, but is not an express finding on that issue. The two issues are not the same, not identical, for one is broader and includes more than the other. The court found the larger issue, which, of course, includes the smaller, and the judgment is rested on the issue as found, and not upon issues not mentioned at all in the finding, and which are only worked out by inference. As a matter of construction, then, I hold that the record shows upon its face that the question of adverse possession, and, consequently, of title in the defendant, was put directly in issue, litigated and found for the defendant, and that the judgment entered is rested on that finding. But if there had been another distinct, express finding that the plaintiff was not in possession at the time of the commencement of the action, the other findings and the judgment being precisely as they now are, I still hold that the matter would be res adjudicata. As before stated, the statute of Nevada authorized the defendant to plead as many defenses as he had. He did plead several, each of which, if sustained, is good. All were tried and submitted, and the issues on the merits were expressly found in a special verdict showing that they were determined and the judgment is appropriate to the issues on the merits, and sanctions and concludes the findings which after judgment are no more open to question except on appeal. So are the authorities under the same system of practice as that which prevails in Nevada, and I have found none to the contrary. Sheldon v. Edwards, 35 N. Y. 286, is exactly in point on this proposition and on the last, but by no means so strong a case on the last proposition as is the case now under consideration. Clink v. Thurston, 47 Cal. 30, and Munson v. Munson, 30 Conn. 426, 433, 434, are also in point; although the latter is under a system of practice different from that which prevails in Nevada. See, also, on the more general question. Low v. Mussey, 41 Vt. 394; White v. Simonds, 33 Vt. 178; Farmers', etc., Bank v. Bronson, 14 Mich. 371; Bissell v. Kellogg, 60 Barb. 627; Amory v. Amory, 26 Wis. 152; Felter v. Mulliner, 2 Johns. 181; Rockwell v. Langley, 19 Pa. St. 502; Day v. Vallette, 25 Ind. 42.

But the law as stated in a recent decision of the supreme court of the United States is also in point, and if it be correct must be conclusive. In House v. Mullen, 22 Wall. [89 U. S.] 42, there was a demurrer to the bill on four distinct specified grounds, of which the first was misjoinder of the parties; and the fourth, that the claim is stale and barred by the statute of limitations, etc. The decree is, "that it is considered by the court that the said demurrer of the defendants be sustained. It is therefore adjudged and decreed that the said bill of complaint of Eliza House, Mary Hunter and Charles Hunter be, and the same is, hereby dismissed out of this court." On appeal, the supreme court hold that the second, third and fourth grounds of the demurrer are untenable, and in those particulars the bill is good; but that the bill is bad on the first ground for misjoinder of parties, and that the "demurrer therefore was properly sustained and bill dismissed." Id. 46. But, says the court, the record does not show that the bill was dismissed for misjoinder of parties, and it is not dismissed "without prejudice." "There are grounds stated in the demurrer which would, if sustained, be a bar to any other suit, to wit: staleness of the claim, statute of limitations, and long acquiescence in the possession and claim of title by the defendants. It does not appear by the decree, or by the order sustaining the demurrer, on which of the grounds set out in the latter it was dismissed, or on what ground it was dismissed. As the record stands, this decree might be pleaded successfully as a bar to any other suit brought by Eliza House, or by Mary Hunter, her child, in assertion of her right to this lot, though we are of opinion that the only defect in the bill is that it shows no interest in Mary Hunter, while it does show a good cause for equitable relief on the part of Eliza House. If the decree had dismissed the bill without prejudice, or had stated as the ground of dismissal the misjoinder of the parties, or the want of interest in two of them, we would have affirmed it; but to prevent a great injustice we must reverse the present decree and remand the case," etc. Thus on the ground alone that the decree in the form rendered would be a bar to another action, on points that ought not to be concluded it was reversed, although there was no technical error. Upon the doctrine of that case there is no escaping the conclusion that the former judgment between the parties in this action is conclusive; for it is a much stronger case for the application of the doctrine than the one cited. In the former action between these parties, the issues were made, submitted, tried, and found by the judge in favor of the defendant in such manner as to show the exact issues found, and a judgment upon the findings entered, such as should be entered on the merits, a judgment in form upon the merits, and not in terms a mere "dismissal out of this court," as in the case of House v. Mullen [supra]. This, therefore, must be regarded as a judgment rendered on the merits. See, also, Durant v. Essex Co., 7 Wall. [74 U. S.] 109. There was, in fact, an appeal in the former action, and counsel

on both sides have referred to the opinion of the supreme court of Nevada on the appeal. 9 Nev. 248. It is manifest that the supreme court also regarded the judgment as having been rendered on the merits, and affirmed it on the ground that the action was barred by the statute of limitations. In the case of Aurora City v. West, 7 Wall. [74 U. S.] 103, the supreme court also says: "The better opinion is that the estoppel, when the judgment is on the merits, whether on demurrer, agreed statement or verdict, extends to every material allegation or statement which, having been made on one side and denied on the other, was at issue in the cause and was determined in the course of the proceeding." And Mr. Justice Miller, who alone dissented, stated the rule to be that "when a former judgment is relied on, it must appear from the record that the point in controversy was necessarily decided in the former suit, or be made to appear by extrinsic proof that it was in fact decided." Id. 106. The case under consideration is, in my judgment, clearly within the very restricted doctrine as stated by Mr. Justice Miller; for it appears by the record itself what issues were submitted, and what issues of fact were in fact found, at least, so far as the defense and title founded upon the statute of limitations are concerned.

The discussions in the courts have heretofore mostly arisen upon general verdicts where it could not be known from the verdict and pleadings upon what particular issues the jury passed. In such cases, some authorities hold that the party relying on the estoppel must show by extrinsic evidence what issues of fact were determined, and this is the view which Mr. Justice Miller seems to hold in the dissenting opinion cited. Other, and apparently a majority of, cases hold that a general verdict is itself prima facie evidence that all the issues of fact were determined, and that the party seeking to avoid the estoppel must show by extrinsic evidence what points in issue were not in fact determined by the jury; and the supreme court seems to go to this extent at least. But no such question can arise on special findings like those in this case where the record itself shows the exact issues found by the judge. The authorities cited by complainant's counsel relate to general verdicts, and are therefore inapplicable.

It is urged that upon the findings there is no estoppel, because the estoppel is not mutual, for the reason that, if certain findings had been the other way, it would not have been conclusive on both. It is not necessary to inquire what might have been the effect, had the findings and judgment been different. The question is, what is the effect upon both parties of the findings and judgment under consideration, not what the effect of some other findings and judgment might be. Are these findings and judgment conclusive on both parties, if conclusive on one? If so, the

estoppel is mutual within the meaning of the rule. This point is also judicially determined in Sheldon v. Edwards, 35 N. Y. 288, before cited. There can be no doubt, I think, that in this case both parties are concluded if either is, and the estoppel is therefore mutual within the rule.

It is further argued, that if this adjudication is conclusive it might result in injustice to the complainant; for, if on appeal, the supreme court should come to the conclusion that the finding upon the issue of the statute of limitation was not supported by the evidence, the judgment could not be reversed, because it is still right on the issue that the plaintiff was not in possession, and the court could not disturb a judgment which is not erroneous. We have already seen that the supreme court of the United States, in House v. Mullen [supra], did reverse the judgment where there was no technical error—where the judgment was not erroneous in the sense in which counsel use the term for the purposes of this argument—and on the sole ground that all the points covered by it would be res adjudicata and operate as an estoppel, whereas it appeared to the court that some of the points ought not to be considered as finally determined, which upon the record as presented would be concluded. This reversal, doubtless, proceeded upon the idea that the judgment was broader in its scope and more advantageous to the plaintiff than he was entitled upon the record to have it. So in this case, if the defendant in the former action obtained a judgment covering the entire merits when, in fact, either upon the issues found or upon the issues correctly found, after determination of the appellate court, that other issues were improperly found, he ought only to have had judgment of nonsuit or dismissal without prejudice, the appellate court would undoubtedly have reversed or modified the judgment, and the latter might be done under the practice in Nevada. This would certainly be doing no vain thing, as insisted by counsel, but doing what a party would be legally entitled to claim at the hands of the court. The court would have no discretion to allow a judgment to stand which would conclude a further litigation of issues, that they were satisfied from the record ought not to be concluded, simply because the judgment in its present form might, also, give proper effect to the determination of other issues properly determined.

Under the system of practice in Nevada at the time, there were two appeals allowed, one from the judgment and one from an order granting or denying a motion for new trial, wholly independent of each other, and which might be taken separately or together, and upon either of which the judgment in a proper case might be modified or reversed. Upon an appeal from a judgment, only questions of law affecting the validity of the judgment could be considered. The facts

could not be reviewed. If a party desired to have the facts reviewed, it was necessary to move for a new trial, and to prepare a statement as the basis of the motion, specifying the precise issues, or points upon which the evidence was insufficient to sustain the verdict or finding, and to insert all the evidence bearing upon that precise point, and no more. Upon a denial of the motion for new trial, the party had his appeal; and the statement for new trial constituted the record upon which the appeal on the points specified was heard. Should the verdict or findings be found to be unsupported by the evidence wholly, or in part, it might wholly, or to the extent found erroneous, be set aside. If the finding set aside is material to support the judgment, the judgment would necessarily be reversed. But if the other findings, not disturbed, are still sufficient to sustain the judgment, the judgment would not, necessarily, be reversed, but it, doubtless, might be. If not reversed, the vacating of the findings on some of the issues not necessary to sustain it, would take those issues out of the operation of the rule relating to res adjudicata, because they would appear not to have been determined. Thus, in the case in hand, suppose there had been another express finding, that the plaintiff in the former action was not in possession at the commencement of the action, and on motion for new trial, or on appeal from the order denying a new trial, the court should be satisfied that the finding as to the adverse possession was not supported by the evidence, but that the finding of want of possession at the commencement of the action was correct, the finding on the issue as to adverse possession could be set aside without disturbing the other findings. But the judgment, if correct, on the remaining issues need not be disturbed, or, if too broad in its scope, it could be modified and properly limited. Thus the rights of the parties could and would be protected. New trials as to some particular issues were often granted, even under the old system of practice, without disturbing the verdict or findings on other issues. Wiggin v. Smith, 54 N. H. 213, 223, 224; Robbins v. Inhabitants of Townsend. 20 Pick. 351; Winn v. Columbian Insurance Co., 12 Pick. 288; Hutchinson v. Piper, 4 Taunt. 555. The practice in California and Nevada affords still greater facilities for pursuing this course, as is sometimes done. Argenti v. City of San Francisco, 30 Cal. 463. Doubtless, if it was more frequently done, it would greatly redound to the advantage of the parties, and conduce to the administration of justice.

But in this case, if the finding upon adverse possession should be set aside, as we have seen, there would be no finding at all on the issue as to plaintiff's possession at the commencement of the action, as that fact is only inferred from the finding on the larger issue of adverse possession for a period of time covering the commencement of the suit, and the judgment would necessarily fall on the vacation of this finding, unless the other facts found also show the better right to be in defendant. The difficulty suggested, therefore, if any there be, could not apply to this case, and the argument is without force here, whatever might be said had there been an express finding on the other issue. In this case, as we have seen, there was an appeal from the order denying a new trial upon the issue as to the adverse possession, and the supreme court held the finding to be amply supported by the evidence. Thus, it is manifest that the power of the courts is ample by vacating one or more of the findings, and by reversing or modifying judgments on appeal so as to restrict their operation, to fully guard and preserve all the rights of litigants without encroaching upon the application of the wholesome doctrine of res adjudicata. Speyer v. Ihmels, 21 Cal. 280, 288, 289, is another example of the reversal of a judgment technically correct on the record for the protection of the rights of the parties. Upon my view therefore there is nothing either upon authority or upon principle to take the case out of the rule of estoppel invoked by defendant. If I am right thus far, then it was finally and conclusively determined in the former action between the same parties that the defendant had the title as against the complainant; for the adverse possession for the time prescribed, not only barred the action to recover the possession, but vested the title as against complainant in the adverse possessor—the defendant. See Arrington v. Liscom, 34 Cal. 380–385, and the numerous cases there cited; Cannon v. Stockmon, 36 Cal. 540; and Leffingwell v. Warren, 2 Black [67 U. S.] 605, where it is said by the supreme court of the United States that "the lapse of time limited by such statutes not only bars the remedy, but extinguishes the right and vests a perfect title in the adverse holder." A title so acquired will be quieted in the adverse holder on a bill in equity for that purpose, even against the holder of the paper title barred. Arrington v. Liscom, 34 Cal. 386; Pendleton v. Alexander, 8 Cranch. [12 U. S.] 462. The latter case, and the statutes under which it arose, were fully examined in Arrington v. Liscom [supra]. The other findings, also, seem to show title in the defendant.

It is further argued, on the part of the complainant, that the statute of limitations does not apply, because the title is in the United States, and such statutes do not run against the government; and Gibson v. Choteau, 13 Wall. [80 U. S.] 92. is cited to sustain the position. But this case can have no application. for, as we have seen, the party who is the owner of the mining claim as against everybody but the United States. under the laws of the state or territory. and the rules and regulations of the locality em-

bracing the mine irrespective of the act of congress, is the party entitled to a patent; and the statutes of limitations of the state or territory applicable to the subject them-selves constitute a part of the laws by which the right to a mining claim is to be determin-ed, for the purpose of ascertaining who is the party upon whom the right to purchase is conferred by the act of congress. Such statutes, as we have seen, are expressly recognized by section 13 of the act of con-gress as a part of the laws by which the right to a patent is to be determined.

So, again, it is urged that there was a trust, or confidence, reposed in the defend-ant and its grantors by complainant and its grantors, as tenants in common, which pre-cluded the defendant from acquiring the title except for the benefit of all. This propo-sition is also untenable. According to the allegations of the bill there was a valid parol partition and segregation of the in-terests of the parties executed and followed by exclusive possession in pursuance of such partition. Such partitions are, doubtless, valid. Long v. Dollarhide, 24 Cal. 218. Thus the parties by this partition ceased to be tenants in common, and forever after dealt at arm's length. Besides, the taking possession of the whole under conveyance from the former locators, claiming to own the whole, and excluding the complainant and its grantors, was a hostile act, which constituted an ouster, and set the statute of limitations in motion. It certainly will not be claimed that one tenant in common can-not oust his co-tenant and by long-continued adverse possession bar his right. But, as we have seen, the parties had ceased to be tenants in common.

After a careful consideration of the case, I am satisfied that the right of the defend-ant as against the complainant was con-clusively adjudicated in the former action, and that the patent properly and rightfully issued to the defendant in its own right. It is, therefore, unnecessary to consider the question as to the conclusiveness of the patent upon the other grounds argued. If, however, the procuring of a patent in a pro-ceeding in all respects regular in its forms in the mode pointed out by this statute, where no fraud has intervened in the course of the proceedings, cannot be regarded as a proceeding in rem, or in the nature of a proceeding in rem, and be conclusive upon all the world, then, in my judgment, the statute ought to be speedily so amended as to make it such a proceeding and conclusive. So, also, if there is any case wherein the doctrine of res adjudicata should be car-ried to its utmost limit, or where the stat-ute of limitations should be rigorously ap-plied, it is this class of cases. There cer-tainly can be no class of cases wherein it is more to the interest of the public that there be an end of litigation. Happily, in this case, as I view it, the question of title ap-pears to have been adjudicated within the most limited scope of the rule of law invok-ed. I cannot close this opinion without ex-pressing my obligations to the counsel on both sides for the very able, thorough and exhaustive printed arguments furnished—arguments every way worthy the importance of the questions involved and the very large pecuniary interests at stake. Let the de-murrer be sustained and the bill dismissed.