# WILLIAM SISSON, APPELLANT, v. ERASTUS HIBBARD AND OTHERS, RESPONDENTS.

*Engine and boiler — when they remain personal property after annexation to realty — Chattel mortgage on — effect of.*

The defendant H. purchased of M. & L., at Rochester, an engine and boiler, to be used in a business carried on by him at Barre, his purpose so to use them being known to the sellers at the time. To secure payment of the price, he gave to M. & L. a chattel mortgage upon the engine and boiler, and certain other personal property, by which they were authorized, in case of default, to enter upon the premises of the mortgagee, or any other place where the mortgaged property might be, and take possession of the property. The engine and boiler were placed in a cheaply-constructed building in such a manner as that, but for the mortgage, they would become a part of the realty. *Held,* that the engine and boiler continued to be personal property, in favor of the holders of the chattel mortgage, as against a purchaser of the land and building upon a sale under an execution, issued on a judgment subsequently recovered against the mortgagor.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee.

This action was brought to recover for the alleged conversion of a steam engine and boiler. On the 24th of November, 1869, the defendant Hibbard purchased of Lamberton & Macks, at Rochester, the engine and boiler in question, on credit. The purchase was made for the purpose of furnishing power in the business of manufacturing staves and heading, which Hibbard was then carrying on, in the town of Barre. The fact that he purchased for that purpose was known to the vendors at the time of the sale. As a part of the transaction Hibbard executed to Lamberton & Macks a chattel mortgage on the engine and boiler, and other property, to secure the purchase-price. The printed case handed up to the court does not contain a copy of the mortgage, but the referee found that it conveyed the engine, etc., bought of L. & M., as aforesaid, "together with the fire kiln on which said engine and boiler might be placed when removed to the town of Barre aforesaid." He also found that the mortgage was conditioned to be void if Hibbard should pay the debt at maturity, otherwise to be an absolute transfer to L. & M., and that it authorized the mortgagees, in case of a breach of its con-

ditions, to enter on the premises of the mortgagor, or any other place where the mortgaged property might be, to take possession of it and sell it, and apply the avails in payment of the debt; and it bound Hibbard to pay the deficiency, if any. Hibbard removed the engine and boiler to Barre and placed them in a cheaply-constructed building in which he carried on said business. They were placed in the building in such a maner as that, but for the chattel mortgage, they became part of the realty. The mortgage was duly recorded, and renewed from year to year.

In the spring of 1873, Hibbard being in default, informed L. & M. that he could not pay for the engine and boiler, and it was agreed that he should give them up, but that they might remain on the premises till L. & M. should wish to remove them. On the 13th of November, 1873, Hibbard, by an instrument of sale, under seal, conveyed the engine and boiler to L. & M. In March, 1874, the defendants Clark and Crary having purchased the engine and boiler of L. and M., they and the defendant Hibbard removed them from the building. In doing so, they necessarily removed some boards from one side of the building, and partly tore down the arch surrounding the boiler. The building was inclosed with boards, and the engine and boiler could be, and were, removed without serious damage to the freehold, and without injuring or impairing their own qualities or value.

The plaintiff claims title under a judgment recovered against Hibbard, docketed 28th January, 1870. Execution was issued, and the land on which the building stood was sold by the sheriff, 15th November, 1873. The purchaser received the sheriff's deed 8th June, 1875. The engine and boiler were in the building at the time of the sale, and the purchaser forbade Hibbard to remove them. After the removal and the delivery of the sheriff's deed, the purchaser demanded possession of the engine and boiler from each of the defendants, which was refused. The plaintiff is the assignee of the purchaser at the sheriff's sale. Neither the plaintiff nor any one through whom he claims title had knowledge or notice of the agreement made between Hibbard and Lamberton & Mack in the spring of 1873, or of the subsequent instrument of sale; and the removal of the property by the defendants was without his knowledge or consent.

The referee held that the title to the property in dispute, under the chattel mortgage, is paramount to the title under the sheriff's deed, and he found for the defendants.

*W. I. Townsend*, for the appellant.

*Angus McDonald*, for the respondents.

SMITH, J.:

The referee was of the opinion that this case is controlled by the decision of the Court of Appeals in *Ford* v. *Cobb* (20 N. Y., 344). The appellant's counsel insists that the referee erred, and that the case of Ford differs from this in several essential particulars. A careful examination of the case referred to will show, I think, that the referee was clearly right. In *Ford* v. *Cobb*, salt kettles were bought and mortgaged to the seller as personalty. They were taken by the purchaser to his salt works and imbedded in brick arches, but could be removed without injury to them, by displacing a portion of the brick at inconsiderable expense, and the course of the manufacture required them to be thus removed and re-set annually. There was no evidence of an agreement that their character of personalty should be preserved notwithstanding the annexation, except such as was furnished by the mortgage itself and the circumstances attending its execution. The mortgage was executed at the time of the purchase. It recited the sale, and that the kettles were about to be taken to the purchaser's salt block and set up therein. The mortgagor was to remain in possession until default, unless the mortgagees should deem themselves insecure, in which case they had a right to take possession of the property and apply it to the payment of the debt. There was no express agreement in the mortgage that the salt kettles should remain personal property, as there was in the subsequent case of *Tifft* v. *Horton* (53 N. Y., 377), which will be referred to presently. It was held by the court that the salt kettles continued personalty as against a subsequent purchaser of the salt works, who had no notice of the facts, other than constructively from the filing of the chattel mortgage. And the court reached their conclusion by adopting and applying the general rule, which is recognized and asserted in numerous other

reported cases, that the question whether an agreement, or the relation between the parties, shall preserve the character of personalty in things so affixed to the freehold, as that but for such agreement or relation they would become a part of the realty, depends upon their essential character, and the mode in which they are annexed, e. g., whether they can be removed without serious damage to the freehold, or substantially destroying their own qualities or value. Two propositions, then, are plainly deducible from the judgment of the court in *Ford* v. *Cobb*, which are applicable to the facts of the present case: 1. Chattels annexed to the realty may, by the intention and agreement of the parties, retain their character as personal property where they can be removed without substantial destruction to themselves or serious injury to the freehold; and, 2. A chattel mortgage, in the usual form, executed in view of the fact that the chattels are, or are about to be, so annexed, is sufficient evidence of such intention and agreement.

The appellant's counsel suggests that the case of *Voorhees* v. *McGinnis* (48 N. Y., 278, subsequently decided by the Commission of Appeals), is in conflict with *Ford* v. *Cobb*, and that as it is the later decision of a court of co-ordinate jurisdiction, it should control. In that case the property in dispute consisted of a steam engine, boilers, gearing, shafting, planing machines, saw benches, turning lathes, etc., connected with, and used in a grist-mill and saw-mill. The annexation to the freehold was of a much more substantial and permanent character than in the case of Ford, and the decision was put upon the ground that, although the owner had no special interest, the facts disclosed that the boilers, etc., were intended to be a permanent accession to the freehold, and that the execution of a chattel mortgage was not sufficient to overthrow this presumption and raise the contrary one of an intent to preserve their personal character. The manner of the annexation may be briefly stated: The boilers and engine were placed on solid brick foundations; the brick work of the foundations was carried up and laid over the body of the boilers; the bricks which covered the top of the boilers needed the boilers for a support, and would necessarily have been displaced by the removal of the boilers. The shafting and gearing was not of value, except as old material, in any other place, unless such other place, in its local arrangements, was nearly

the same as said mills. It was evidently considered by a majority of the court that the boilers, etc., could not have been removed without substantially destroying their own qualities and value or seriously damaging the freehold. In that view the decision is in harmony with *Ford* v. *Cobb*. But whether or not the two cases differ materially in their facts, the weight of Voorhies' case, as an authority, is lessened by the fact that it was decided by a divided court, a bare majority concurring, and the views of the minority being expressed in a carefully written and forcible dissenting opinion.

The later decisions of the Court of Appeals, to which counsel have referred, are in harmony with *Ford* v. *Cobb*. They are *Shelden* v. *Edwards* (35 N. Y., 279), *Potter* v. *Cromwell* (40 id., 287) and *Tifft* v. *Horton* (53 id., 377). The latter case was like the present one, and like Ford's case, except that in Tiffts' case alone, the chattel mortgage expressly provided that the chattels should remain personal property till the debt was paid, notwithstanding the annexation to the realty. That circumstance was adverted to as a clear showing of the intention of the parties in that regard, but there is no intimation, in the opinion of the learned judge, who spoke for all the members of the court, that the lack of that provision would have affected the result.

In the case of *Kinsey and others* v. *Bailey*, decided by this court at the term held in October, 1876, and reported 9 Hun, 452, it was held that the execution of a chattel mortgage, under circumstances substantially like those existing in this case, which mortgage contained no express provision that the mortgaged chattels should remain personal property, was of itself a clear manifestation of an intention that the character of personalty should continue, after the annexation to the realty, till the debt should be paid. In that case, there was some other evidence tending to show the intention, consisting of parol testimony to the effect that before the mortgage was executed, the mortgagee declined to advance money on the proposed mortgage, till he could take legal advice on the question whether the machinery, etc., would remain personal property, and that the mortgagors claimed to know that it would. But for that circumstance the case would have been on all fours with this, and decisive of it.

Taking, then, the law as laid down in *Ford* v. *Cobb*, and applying

it to the facts of the case now before us, what is the result? The annexation, in this case, was of a very unsubstantial character. The building in which the engine and boiler were placed was hardly more than a shelter to protect them from the weather. They were removed without any destruction to themselves, or serious injury to the building. The few bricks that were displaced, and outer boards that were removed, could readily be replaced at slight expense. The case was one, therefore, in which, according to the rule in *Ford's Case*, an agreement that the chattels should remain personal property would have the effect to prevent the annexation from making them a part of the realty.

Was there such an agreement? That depends on the effect to be given to the mortgage in view of the circumstances attending its execution. When the mortgage was given the mortgagor intended, as the mortgagees knew, to remove the boiler and engine to his premises in Barre, and place and use them there, as was afterwards done. The fact that the parties contemplated such removal and use of the property was referred to in the mortgage. The mortgage also authorized the mortgagees to enter on Hibbard's premises and take the property in case of default. In these respects it was almost a transcript of the mortgage in *Ford's Case*. In these circumstances the mortgage plainly manifested the intention of the parties that the property should retain its character of personalty, notwithstanding its contemplated annexation to the building and use as an apparent part of the realty. Unless the mortgage is to receive that construction it was wholly nugatory, except as a promise by the mortgagor to pay his own debt. For these reasons we think the title under the chattel mortgage should prevail.

It is said by the appellant's counsel that the defendants derive title from the bill of sale and not from the mortgage. Not so. The only effect of the bill of sale was to release the equity of redemption making the mortgage title absolute.

The judgment should be affirmed.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment affirmed.